# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF ARKANSAS, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN, and CITY OF CHICAGO, *ex rel*. JENNIFER BUTH, <br><br>Plaintiffs, <br><br>v. <br><br>WALMART INC., <br><br>Defendant. | Case No. 18-CV-840-JPS <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**ORDER** <br>*SEALED* |

This *qui tam* action arises from a complaint filed by the relator under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* against

defendant Walmart, Inc. ("Walmart"). (Docket #1). The relator, a pharmacist who was employed by Walmart in Wisconsin from July 2017 through May 2018, alleges that she has personal knowledge of fraudulent schemes used by Walmart across the country to submit false claims for payment to Medicare, Medicaid, and other government insurance.

The FCA creates liability for, among other things, knowingly presenting false or fraudulent claims for payment when such claims are presented to, or function to the detriment of, the United States of America. *See* 31 U.S.C. § 3729(a)(1)(A) and (b)(2)(A). Under the FCA, a private person "may bring a civil action for a violation of section 3729 for the person and for the United States Government." *Id.* § 3730(b)(1).

When a private person brings suit under the FCA, the complaint—filed *in camera*—remains under seal "for at least 60 days" and is not served on the defendants absent a court order. *Id.* § 3730(b)(2). Once duly served with the complaint and material evidence, the United States must elect "within 60 days" to either: (i) intervene in, and assume "primary responsibility for prosecuting[,]" the action pursuant to 31 U.S.C. § 3730(b)(2), (b)(4)(A), and (c)(1); or (ii) "notify the court that it declines to take over the action" in accordance with 31 U.S.C. § 3730(b)(4)(B).

Here, the relator's complaint was filed on June 1, 2018 and served on the United States the same day. (Docket #1 and #7 at 1). The government does not say whether it received the "material evidence" on that day as well, but the Court will assume it did. Therefore, under Section 3730(b)(2), the government's deadline to intervene was July 31, 2018.

On July 25, 2018, the government filed an *ex parte* motion requesting an extension of time to intervene in this *qui tam* action and an order that the complaint and all other papers in this action remain under seal until

February 1, 2019. (Docket #6 and #7 at 5). Under the FCA, the "[g]overnment may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal." 31 U.S.C. § 3730(b)(3). Any such extension controls the time frame during which the government must notify the court of whether it will intervene. *Id.* § 3730(b)(4).

The government's request for an extension is not unusual. Unfortunately, it has become common practice for the government to seek multiple extensions of the seal and its deadline to intervene in FCA cases, allowing one-sided litigation to occur out of the public eye for months or years in cases involving allegations of fraud against the United States. Without an opposing party to object, courts across the country have adopted the comfortable routine of regularly granting extensions that prolong unnecessarily the sealing of *qui tam* cases. This was not the intention of the FCA's drafters.

When Congress set out to amend the FCA in 1986 to encourage more relators to come forward with *qui tam* lawsuits, the Department of Justice worried that some of those private suits would overlap criminal investigations and that criminal targets would be tipped off early by the civil action. S. Rep. No. 345, 99th Cong., 2d Sess. 24 (1986). The 60-day initial seal provided by the act is a compromise intended to address that concern and to "protect the Government's interest in criminal matters." *Id.* Specifically, the Senate Judiciary Committee reported that:

> Keeping the *qui tam* complaint under seal for the initial 60-day time period is intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action.

*Id*. Referring to the extension of time provision at issue here, the committee went on to write that:

> Extensions will be granted, however, only upon a showing of "good cause." The Committee intends that courts weigh carefully any extensions on the period of time in which the Government has to decide whether to intervene and take over the litigation. The Committee feels that with the vast majority of cases, 60 days is an adequate amount of time to allow Government coordination, review and decision. Consequently, "good cause" would not be established merely upon a showing that the Government was overburdened and had not had a chance to address the complaint. While a pending criminal investigation of the allegations contained in the *qui tam* complaint will often establish "good cause" for staying the civil action, the Committee does not intend that criminal investigations be considered an automatic bar to proceeding with a civil fraud suit.
>
> The Committee believes that if an initial stay is granted based on the existence of a criminal investigation, the court should carefully scrutinize any additional Government requests for extensions by evaluating the Government's progress with its criminal inquiry. The Government should not, in any way, be allowed to unnecessarily delay lifting of the seal from the civil complaint or processing of the *qui tam* litigation.

S. Rep. No. 99-345, at 24–25.

Nowhere in the committee's report is there a suggestion that courts should ignore the interests of the defendants and the public when considering requests for extensions of the seal in *qui tam* cases. And nowhere is there a suggestion that the government should be permitted, as it has been in many districts, to build its case under seal, conducting unchecked discovery and even negotiating settlements with defendants for whom the complaint's allegations are a mystery. *See e.g., U.S. ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, 912 F. Supp. 2d 618, 625 (E.D. Tenn. 2012)

(criticizing the government but acknowledging the prevalence of lengthy court-granted sealing periods). Although the FCA empowers the government to conduct some pre-intervention discovery through civil investigative demands ("CIDs"), *see* 31 U.S.C. § 3733, such discovery is not without limits; its purpose is only to inform an intervention decision, not to build a case. *See United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) ("Congress intended the false claims CID to provide the Department of Justice with a means to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested, whether grounds exist for initiating a false claim suit under 31 U.S.C. §§ 3729–32, particularly in cases of possible procurement fraud."). While the government does not always feel itself constrained by concerns of timeliness or taxpayer expense, this Court is loath to ignore such concerns.

Indeed, it has long been the prerogative of this branch of the Court to ensure that actions are resolved expeditiously; in regular civil cases, this means resolution within one year of filing. This is consistent with the Court's responsibilities with regard to matters involving scheduling under the Federal Rules of Civil Procedure, and in particular the admonishment of Rule 1 that the Court has a duty to ensure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Mothballing a case for months or years while the government slowly builds its case under the cloak of a seal is wholly inconsistent with that goal.

In this case, the government has asserted that good cause for an extension of the seal exists because its "diligent[] investigat[ion]" thus far has caused it to anticipate the need to interview other former employees of the defendant who may be able to corroborate the relator's allegations. (Docket #7 at 4). Government investigators have also requested Medicare

and Medicaid billing data to assist them in evaluating the defendant's billing practices and assessing the extent of the allegedly false claims. *Id.* The government also anticipates the need for additional investigative steps, such as obtaining documents from the defendant. *Id.*

As explained above, "good cause" cannot be established merely upon a showing that the government did not yet have time to turn its attention to the investigation necessary to make an intervention decision. Here, the government claims to have acted diligently to investigate the relator's claims and has outlined the additional investigative steps that must be taken for it to make an informed intervention decision. Congress expects that this initial investigative phase can and should be completed in the initial 60-day period allowed for the government to consider intervention. S. Rep. No. 99-345, at 24–25. Nonetheless, the Court sympathizes with the government's position at this point in this case, where it appears the government has been actively investigating the relator's allegations and requires additional corroborating evidence to make its decision about intervention.

Therefore, finding good cause in the government's motion, the Court will grant it. However, the extension of time to intervene in this matter will be granted only up to and including December 31, 2018. This extension is intended to allow the government adequate time to consider intervention; it is not intended to allow the government time to conduct one-sided discovery while the action is under seal. No further extensions will be considered. The Court will also grant the government's request to extend the seal on this action until further Court order. However, upon the unsealing of the complaint in this action, this Order will also be unsealed and will become part of the public record.

Finally, the Court hereby puts the government on notice that, in all future *qui tam* proceedings under the FCA pending in this branch of the Court, the government is expected to provide notice regarding its intervention within the statutorily prescribed 60–day sealing period. Any requests to extend the seal and the deadline for intervention will be met with meaningful and exacting scrutiny.

Accordingly,

**IT IS ORDERED** that the government's *ex parte* motion for an extension of time to determine whether to intervene in this action (Docket #6) be and the same is hereby **GRANTED up to and including December 31, 2018**; and

**IT IS FURTHER ORDERED** that the government's *ex parte* motion for extension of the seal in this matter (Docket #6) be and the same is hereby **GRANTED** until further order of the Court.

Dated at Milwaukee, Wisconsin, this 22nd day of August, 2018.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge