# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES of AMERICA, *ex rel.* JENNIFER BUTH,  Plaintiffs,  v.  WALMART INC.,  Defendant. | Case No. 2:18-cv-00840-NJ  Honorable Nancy Joseph |

## WALMART INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ..................................................................................................................... 1

    A.    Relator's "Nationwide Scheme" Allegations Fail ................................................ 1

    B.    Relator's 90-Day Conversion Claim Fails ............................................................ 6

    C.    Relator's Short-Fill Claim Fails ........................................................................... 8

    D.    Relator's "Days'-Supply" Claim Fails................................................................ 10

        1.    Insulin Pens............................................................................................ 10

        2.    Triamcinolone Cream ............................................................................ 12

    E.    Relator Abandons Her "Expiration Dates" Scheme and Any FCA Claim Premised on Training.......................................................................................... 12

    F.    Relator's State Law Claims Fail ........................................................................ 13

    G.    Relator's Claims Beyond the Statute of Limitations Should Be Dismissed........ 13

CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 11

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (U.S. May 13, 2019) . 13

*Flynn v. FCA US LLC*, No. 15-CV-0855-MJR-DGW, 2017 WL 3592040 (S.D. Ill. Aug. 21, 2017) .................................................................................................................................. 13

*Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807 (N.D. Ill. 2013) .............................. 13, 14

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8 (1st Cir. 2009) ...... 13

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................................................................................... 10

*Sullivan v. Leor Energy, LLC*, 600 F.3d 542 (5th Cir. 2010) ...................................................... 13

*U.S. ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*, No. CIV.A. 09-10179-GAO, 2012 WL 8667597 (D. Mass. Mar. 6, 2012) .................................................................................. 5

*United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1340 (N.D. Ga. 2015) ... 5

*United States ex rel. Hubert v. Bd. of Educ. of City of Chicago*, No. 16 C 4336, 2018 WL 6248827 (N.D. Ill. Nov. 29, 2018) ....................................................................................... 12

*United States ex rel. Hunt v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430 (E.D. Pa. 2004) ................................................................................................................................... 9

*United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964 (S.D. Ind. 2018) ......................................................................................... 12

*United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 893 (E.D. Wis. 2016) ............................................................................................................................................... 2

*United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779 (N.D. Ill. 2017) ........ 6, 7, 8

*United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125 (E.D. Pa. 2012). .......... 4

*United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 18-CV-673-GKF-FHM, 2019 WL 1086363 (N.D. Okla. Mar. 7, 2019) ............................................................. 3

*United States ex rel. Thayer v. Planned Parenthood of Heartland, Inc.*, No. 4:11-CV-00129, 2016 WL 7474797 (S.D. Iowa June 21, 2016) ...................................................................... 8

*United States v. Lewis*, 411 F.3d 838 (7th Cir. 2005) ................................................................. 14

*United States v. SuperValu, Inc.*, 218 F. Supp. 3d 767 (C.D. Ill. 2016) ...................................... 3, 4

*Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) .................. 7, 12

**OTHER AUTHORITIES**

Amended Complaint, *United States ex rel. Hunt v. Merck-Medco Managed Care, L.L.C.*, No. 2:00-cv-00737-WD (E.D. Pa. Dec. 9, 2003) (ECF No. 76)......................................................... 9

Complaint-in-Intervention of the United States, *United States of America ex rel. Rahimi and Schulte v. Walgreens Boots Alliance, Inc.*, No. 1:15-cv-05686-PAC (S.D.N.Y. Jan. 22, 2019) (ECF No. 17).............................................................................................................................. 11

Relator Jennifer Buth's Opposition ("Opposition") attempts to paint a gloss over the First Amended Complaint ("FAC")'s implausible and conclusory allegations. The fact remains, however, that the FAC falls well short of the pleading requirements under the Federal Rules of Civil Procedure—impermissibly relying on conclusions rather than facts, repeatedly contradicting itself, and failing to plead key elements of a False Claims Act ("FCA") violation. For these reasons, articulated both here and in Walmart's Memorandum of Law in Support of its Motion to Dismiss ("Memorandum"), the FAC should be dismissed in its entirety and with prejudice.

## ARGUMENT

### A. Relator's "Nationwide Scheme" Allegations Fail

Relator fails to allege any nationwide scheme. The Opposition asserts that such a scheme is premised on "company-wide directives, policies, and Walmart's corporate culture." (Opp'n 5.) But nowhere in the FAC does Relator cite an actual company-wide policy or directive that permits or encourages any unlawful conduct. Just the opposite: Relator admits that the cited Walmart policies comply with the law. (*See, e.g.*, FAC ¶ 121 ("The process [POM 1009], as written, comports with administrative rules promulgated by the Wisconsin Board of Pharmacy …").) The same is true of the other policies attached to Walmart's Memorandum, and Relator does not claim otherwise. As for Walmart's alleged "corporate culture," which the Relator claims she "personally observed," (Opp'n 2, 5, 12), Relator cannot plausibly allege—let alone allege with the particularity that Rule 9(b) requires—any facts about Walmart's supposed nationwide "culture." Relator worked in a single one of Walmart's 3,500 pharmacies, for less than one year. (FAC ¶ 27.) Nowhere does the FAC assert that Relator Buth had any responsibilities outside of that single Walmart store, or even stepped foot in one. Nor does Relator allege that she attended any company-wide trainings, seminars, or meetings.

Faced with the clear opinion of a court in this District dismissing a similar complaint, *see United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 893, 896–97 (E.D. Wis. 2016), Relator claims that the case is inapposite, but simply mischaracterizes the opinion. While it is true that the *Kroening* court found the complaint deficient under Rule 9(b) for various reasons, the court specifically found "that the lack of any specific allegations directed towards fraudulent conduct occurring in any state other than Wisconsin presents an ***additional reason*** why" the claims involving other states were dismissed. *Id.* at 897 (emphasis added). The *Kroening* court found that "[relator's] assertion that he spoke with other [of defendant's] sales representatives from 17 other states . . . insufficient to satisfy the particularity required under Rule 9(b)." *Id.* at 896. That court also noted that the relator "implicitly concedes that he lacks any details regarding alleged false claims in [several jurisdictions]. The amended complaint is devoid of any details regarding false claims in those states, lacking even purported hearsay from other sales representatives." *Id.*

The same reasoning applies here, and even more powerfully. Relator's ***only*** reference to allegations of misconduct actionable under the FCA in other states is a single, conclusory sentence that "as of December 2018, Walmart pharmacies in Mt. Sterling, Kentucky; Bentonville, Arkansas; and Belmont, North Carolina either did not properly calculate days' supply for insulin or only recently began to break boxes . . . ." (FAC ¶ 221.) Relator provides no facts at all—let alone with particularity—as to how she mysteriously knows what happens in these three cities located in three separate states in which she has never worked for Walmart. In addition, those stray references apply only to insulin pens—one aspect of a single one of Relator's theories. As to the other claimed schemes, the FAC is completely silent as to alleged misconduct in other states.

Relator's own cases, all but one out-of-circuit, only serve to demonstrate why the FAC's nationwide allegations fail.  In *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, the relator worked for one of the defendant pharmacies for five years, in contrast to Buth's experience of less than one year.  No. 18-CV-673-GKF-FHM, 2019 WL 1086363, at *1 (N.D. Okla. Mar. 7, 2019).  Also, the *Strauser* relator alleged FCA violations in seven states, whereas Buth alleges violations across 3,500 Walmart pharmacies across the nation.  *Id.* at *15.  In support of his seven-state allegations, the *Strauser* relator "***describe[d] communications*** relator allegedly had on April 5 and 6, 2013, with technicians at pharmacies in Arkansas, Mississippi, Oklahoma, and Tennessee, during which the technicians confirmed that their pharmacies continued to offer four-dollar generic pricing through the acquisition by Walgreens." *Id.* (emphasis added).  Here, Buth describes nothing; instead merely stating in one paragraph that "as of December 2018, Walmart pharmacies in Mt. Sterling, Kentucky; Bentonville, Arkansas; and Belmont, North Carolina either did not properly calculate days' supply for insulin or only recently began to break boxes . . . ." (FAC ¶ 221.)  Finally, the *Strauser* relator, unlike Buth, alleged that defendant's "corporate management—individuals identified by name—implemented uniform pricing policies and practices for government payers in seven states by ***programming*** the chain's ***uniform billing and dispensing software*** to bill phony U&C charges to third-party payers." *Strauser*, 2019 WL 1086363, at *15 (emphases added).  Under these circumstances, the *Strauser* court found these allegations reasonably tied to a company-wide scheme.  The FAC, on the other hand, does not (and cannot) allege such a similar programmed or systemic fraud.

In *United States v. Supervalu, Inc.*, it does not appear that defendant separately challenged the sufficiency of the relators' nationwide allegations.  218 F. Supp. 3d 767 (C.D. Ill. 2016).  In any event, the circumstances were much different.  There, the court was confronted

with an alleged FCA violation where defendants failed to include "price-match discounts in their usual and customary calculations." *Id.* at 770. "[T]hese allegations [were] bolstered by computer printouts of customer transactions from the Defendants' ***centralized claims processing system*** which show the low prices charged the general public and the inflated prices charged the government health programs for the same drugs." *Id.* (emphasis added). Here, Buth asserts instead that a variety of different medications, dispensed across thousands of different Walmart pharmacies, by tens of thousands of different employees, simply ***must have*** followed the same practices she claims to have witnessed in her own pharmacy in New Berlin, Wisconsin. Nowhere does she allege that Walmart's system required pharmacies or their staff to engage in these allegedly fraudulent practices (*e.g.*, that Walmart's system required improper 90-day conversion or dispensing of full boxes of insulin pens). Quite the opposite: Relator admits that Walmart's policies actually required compliance with the law. (*See, e.g.*, FAC ¶ 121 ("The process [Walmart policy on "Visual Verification"], as written, comports with administrative rules promulgated by the Wisconsin Board of Pharmacy . . .").)

The remaining cases Relator cites in the Opposition all involved materially different facts. In *United States ex rel. Spay v. CVS Caremark Corp.*, relator "identifie[d] over 49,000 problematic claims and describe[d], with great detail, a large number of them.*"* 913 F. Supp. 2d 125, 174 (E.D. Pa. 2012). The defendant had "utilize[d] a nationwide claims adjudication system and has admitted that they intentionally make no effort to ensure that prescribers are identified or to deny claims for excluded or unlicensed providers." *Id.* at 176. The matter now before the Court could not be more different. Buth has alleged only a handful of purported examples of her alleged fraud schemes—all of which are limited to her own Wisconsin

pharmacy. And Relator identifies no nationwide system that requires or even encourages employees to engage in any of the alleged schemes.

In *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, the relators had nearly a decade's experience that spanned seven states—"almost the entire South." 165 F. Supp. 3d 1340, 1348 (N.D. Ga. 2015). The court reasoned that, "if the alleged violations of a national VA fee ban were occurring in seven states, including four of the ten most populous states in the nation in Texas, Florida, Georgia, and North Carolina, such conduct is likely to have occurred nationwide." *Id.* Here, Relator admits that she spent less than one year with Walmart, (FAC ¶ 27), and, as discussed above, the FAC contains no assertion that Relator even set foot in *any* other Walmart pharmacy—in Wisconsin or otherwise.

Finally, in *U.S. ex rel. Drennen v. Fresenius Medical Care Holdings, Inc.*, the relator detailed "the business practices he observed during his employment, his supervision of *ten dialysis clinics*, and the research he performed of the clinics' testing records." No. CIV.A. 09-10179-GAO, 2012 WL 8667597, at *3 (D. Mass. Mar. 6, 2012) (emphasis added). That complaint also described the "nationwide computer and billing system" that the relator used to research the defendants' alleged violations. *Id.* Here, in marked contrast, Relator spent less than one year in a single pharmacy, does not allege any historical review of Walmart's computer system to search for billing practices, and does not allege that any of Walmart's systems or policies required pharmacies to engage in the purported fraud schemes.

Relator's allegations regarding other pharmacies amount to impermissible speculation and fall well short of the strictures of Rule 9(b). Accordingly, in the event the Court finds that any of the alleged schemes sufficiently pled, they should be limited to only those claims in Relator's New Berlin, Wisconsin pharmacy.

## B. Relator's 90-Day Conversion Claim Fails

The Opposition fails to salvage the pleading deficiencies related to the "30-to-90 Day Conversion" allegations. Chief among the problems with this claim is Relator's total failure to identify any false statement, the *sine qua non* of a FCA violation, whether express or implied. (*See* Mem. 6–8.) Nowhere does the FAC allege that Walmart falsely states that the prescription claims are anything other than a 90-day supply or that Walmart falsely bills for such a 90-day supply. Nor does the FAC even allege that prescription conversions of lawful prescriptions with authorized refills from 30 to 90 days are themselves impermissible under any federal or state law.

*United States ex rel. Lisitza v. Par Pharmaceutical Cos.* illustrates the FAC's insufficiency in pleading. 276 F. Supp. 3d 779 (N.D. Ill. 2017). The Opposition contends that *Lisitza* is "markedly different" than the FAC's 30 to 90 day conversion claim because "the defendant was not unlawfully tripling the amount of medication given to a customer as here, but rather was switching the dosage form of the medication dispensed (*e.g.*, tablet versus capsule), while keeping the strength and quantity the same." (Opp'n 26.)[1] Relator misses the point. The FAC does not contend that the practice of converting a 30-day prescription with refills to a 90-day supply itself violates the FCA. Nor does it allege anything facially false about any claim submitted to the government. Relator does not claim, for example, that Walmart falsely claims to have filled a 30-day prescription or that Walmart claims to have filled a 90 days' supply but provided less. Instead, the Opposition pins the alleged false claim to a vague and unsupported contention that "converting customers' 30-day prescriptions to 90-day prescriptions violates

---

[1] Relator also attempts to brush aside *Lisitza* as a summary judgment opinion. But that is a distinction without a difference because the Lisitza court directly addressed the element of FCA falsity, which is at issue here, and in a very similar context.

laws, regulations, and guidance when it is done without reviewing the customer's prescription history, obtaining customers' consent, or exercising professional judgment of the pharmacist." (*Id.* at 25; FAC ¶¶ 82, 85, 251, 235, 250.) In this regard, Relator advances the same sort of claim that plaintiffs in *Lisitza* advanced—that the defendant "caused the pharmacies to submit claims for reimbursement, which, while facially truthful with respect to the goods provided and their cost, were false because the pharmacies had omitted the information" that they, among other things, had substituted forms or dosages to maximize their profit. *Lisitza*, 276 F. Supp. 3d at 793–94. Notably missing from Relator's claim is any reference to the specific law, regulation or federal health care program requirement governing conversion of a 30 day prescription to a 90 day fill. And for good reason, as such a prohibition does not exist.

To the extent the Relator is pursuing a theory of implied false certification, any such claim fails. As the Supreme Court explained in *Universal Health Services, Inc. v. United States ex rel. Escobar*, such a claim may proceed when: "first, the claim does not merely request payment, but also makes ***specific representations*** about the goods or services provided; and second, the defendant's failure to disclose noncompliance with ***material*** statutory, regulatory, or contractual requirements makes those representations ***misleading half-truths***." 136 S. Ct. 1989, 2001 (2016) (emphasis added). The FAC fails on both counts. First, the FAC is silent as to any allegation that, when Walmart submitted a claim, it made any specific representations relevant to the alleged conversion claim (*See* Opp'n 25); *see Lisitza*, 276 F. Supp. 3d at 798 (because any potential statement in the certification of claims submitted by defendant did not "focus [on] the plaintiff's arguments," defendant could not be found to have made "specific representations about the goods or services provided"). Second, the FAC pleads no facts—let alone with particularity—showing a misleading omission or "half-truth" as to whether the original

prescription was written for 30 days with refills, or for 90 days. *See Lisitza*, 276 F. Supp. 3d at 799 ("Here, the claims at issue provide no basis to infer that the drug dispensed was the drug originally prescribed."). Moreover, even if the FAC did show a misleading omission, it pleads no facts showing such an omission is material to any payment decision as required by *Escobar*, nor does the FAC, for good reason, plead any facts that the government paid any more for a 90-day prescription fill than for three 30-day prescription fills.

Relator's reliance on *United States ex rel. Thayer v. Planned Parenthood of Heartland, Inc.* is misplaced. No. 4:11-CV-00129, 2016 WL 7474797 (S.D. Iowa June 21, 2016). In *Thayer*, the court dismissed many of the allegations for the same reason that the FAC here fails. For example, the court dismissed relator's allegations that the defendant's claims were false because the prescriptions were dispensed without "a valid patient-practitioner relationship" because "even if a valid patient-practitioner relationship were required, Plaintiff pleaded no facts indicating that this requirement would be 'material.'" *Id.* at *9 (citation omitted). Nor has Relator Buth done so in the FAC. In addition, *Thayer* (which was announced mere days after the Supreme Court's opinion in *Escobar*) fails to analyze the key element of a "specific representation," which is lacking entirely here.

Because Relator fails entirely to plead any materially false statement or omission with the particularity the law requires, the 90-Day Conversion claim should be dismissed.

**C.   Relator's Short-Fill Claim Fails**

In support of the "Short-Fill" claim, the FAC relies on a chain of inferences that are also contradicted by the FAC itself. At base, Relator claims that Walmart pharmacy technicians and pharmacists systematically under count dispensed medication allowing the pharmacies to then re-sell the medication that should have already been dispensed. (FAC ¶ 143.) But nowhere does Relator explain, let alone with particularity, how Walmart would systematically implement a

purported scheme in which many thousands of disparate employees count out fewer pills than prescribed. In fact, Relator concedes that Walmart policy requires pharmacists to visually verify *every* prescription. (*Id.* ¶ 119.) However, because this policy does not explicitly require a pharmacist to re-count the pills, Relator jumps to the conclusion that Walmart intends to purposefully short patients and defraud the government. (*Id.* ¶ 183.) And yet, Relator freely admits that she (and other pharmacists) were "legally responsible for overseeing all pharmacy operations, including the prescription-filling process, inventory control, and supervision of staff Walmart assigns to its retail pharmacy operations." (*Id.* ¶ 110.) In other words, she could (and should) have counted any medications and corrected errors if she believed that there had been an underfill or that a technician had a proclivity to undercount. No Walmart policy encouraged or required employees to dispense fewer than the number of pills prescribed.

In an attempt to support this implausible claim, Relator relies upon *United States ex rel. Hunt v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430, 434–35 (E.D. Pa. 2004), contending that, "[l]ike here, the relator in *Hunt* alleged that the defendant short-filled prescriptions and 'billed for prescriptions containing less than the required number of pills.'" (Opp'n 19 (citing *Hunt*, 336 F. Supp. 2d at 434–35).) But the facts in *Hunt* were entirely different. That complaint alleged that "there were significant shorting problems from the ***automated*** 'Baker Cells system,' the machinery which distributes pills to prescription bottles." Amended Complaint, *United States ex rel. Hunt v. Merck-Medco Managed Care, L.L.C.*, No. 2:00-cv-00737-WD (E.D. Pa. Dec. 9, 2003) ¶ 106, ECF No. 76 (hereinafter "*Hunt* Compl.").[2] Specifically, it alleged that "[t]he automated Baker Cells system malfunctions and shorts prescriptions" (*id.* ¶ 109). Here, Relator does not allege any similar systematic miscounting

---

[2] A copy of the Hunt Complaint is available in Walmart's Appendix, filed contemporaneously herewith.

caused by a centralized system. Instead, she makes the implausible and wholly unsupported claim that many thousands of individual Walmart employees systematically violated a Company policy that expressly requires accurate dispensing.

Relator's "Short-Fill" allegations lack any requisite detail and are both incoherent and contradictory. "[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (collecting cases). Accordingly, the Short-Fill claims should be dismissed.

## D. Relator's "Days'-Supply" Claim Fails

### 1. Insulin Pens

Relator's arguments as to insulin pens under the "Days'-Supply Scheme" miss the mark for several reasons, and any such claims should be dismissed. First, in an effort to distract from the FAC's shortcomings, the Opposition cites a recent settlement agreement by another retail pharmacy chain in another jurisdiction. (Opp'n 3, 16 n.7.) Relator claims that her alleged scheme is "identical to a scheme engaged in by Walgreens." *Id.* That is not so. In the Walgreens matter, the government alleged that "Walgreens's electronic pharmacy management system defined a box of insulin pens – typically containing five individual pens – as the minimum package size. In other words, Walgreens pharmacists ***were not able to dispense fewer than a full box of insulin pens at a given time***." Complaint-in-Intervention of the United States, *United States of America ex rel. Rahimi & Schulte v. Walgreens Boots Alliance, Inc.*, No. 1:15-

cv-05686-PAC (S.D.N.Y. Jan. 22, 2019) ¶ 4, ECF No. 17 (emphasis added).[3] Here, nowhere does the FAC allege that Walmart's system disallowed the dispensing of partial boxes.

Second, the Opposition ignores many of Walmart's arguments—principally that the FAC's only factual allegations in support of this claim relate to alleged poor training and "rapid fire dispensing." (Mem. 15–18.) The FAC spuriously concludes that, "under Walmart's corporate policy of rapid-fire dispensing, *it is impossible*" to "convert[] from units-per-day to days' supply and pens-per-script and break[] open boxes," ( FAC ¶ 207), equating that practice with an "unofficial but regularly followed policy." (*Id.* ¶ 208.) Relator asks this Court to take an allegation that Walmart's "system begins to flash yellow or red depending on how 'behind' the pharmacist is," (*id.* ¶ 132), and that Walmart "closely monitor[s] the speed with which Walmart staff fill prescriptions," (*id.* ¶ 128), and then leaps to the conclusion that "it is impossible" for all Walmart employees to dispense the proper amount of insulin pens. (*Id.* ¶ 207.) Not once does the FAC factually allege *how* these circumstances make it "impossible" to dispense less than a box. Not once does the FAC describe how allegedly "undertrained" staff *necessarily* cause overbilling on insulin pens. Simply put, the FAC jumps to conclusions that are not supported by the threadbare factual allegations Relator offers.

Finally, Relator's defense of her materiality allegations also fails. The Opposition points to the statement in the FAC that the government "paid and continues to pay the claims that would not be paid but for [Walmart's] illegal conduct." (Opp'n 17 (citing FAC ¶ 270).) That statement is no more than a "[t]hreadbare recital of the elements of a cause of action" that is properly ignored. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Not coincidentally, it is contained in the FAC's section titled "Counts," *i.e.* a recitation of the causes of action.

---

[3] A copy of the Complaint-in-Intervention is available in Walmart's Appendix, filed contemporaneously herewith.

Moreover, allegations in support of materiality must be pled with particularity. *See United States ex rel. Hubert v. Bd. of Educ. of City of Chi.*, No. 16 C 4336, 2018 WL 6248827, at *9 (N.D. Ill. Nov. 29, 2018) ("In sum, [relator] has not pled with the requisite particularity that any of the alleged violations were so material that the Government would refuse payment were it aware of the violation." (citing *Escobar*, 136 S. Ct. at 2004)); *see also United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964, 977 (S.D. Ind. 2018) (plaintiff failed to plead materiality because "[n]o facts [were] alleged as to what types of claims the government usually did or did not pay, nor as to what the government's compliance priorities were, nor as to the degree of severity of the [defendant's] alleged breaches of regulation"). The FAC pleads no facts, but only conjecture and a conclusion, and thus fails to allege materiality.

### 2. Triamcinolone Cream

As to triamcinolone creams, the Opposition merely recites the same conclusory paragraphs from the FAC. (Opp'n 10.) Similar to the insulin pens claim, the FAC merely concludes—without any elaboration or factual particularity—that Walmart pharmacists *nationwide* routinely "skip" the step of calculating the days' supply for applying triamcinolone cream. (FAC ¶ 215.) Relator does not provide a single example of such an allegedly widespread fraud scheme, and the Opposition fails to address that failure. (Mem. 19.) Relator's claims as to triamcinolone cream should be dismissed.

### E. Relator Abandons Her "Expiration Dates" Scheme and Any FCA Claim Premised on Training

In her Opposition, Relator abandons her "fourth scheme alleged in the Complaint" regarding purportedly false expiration dates (Opp'n 4 n.3). She also fails to refute Walmart's argument that any separate FCA violation based upon her amorphous "ineffective training"

allegations should be dismissed as well (*see* Mem. 19–21). Accordingly, any such claim should be dismissed with prejudice.

**F.      Relator's State Law Claims Fail**

Because Relator's FCA claims against Walmart should be dismissed due to fatal pleading deficiencies, her state law claims (Counts Seven through Thirty-Eight) should also be dismissed. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010) ("State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)."); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (same); *Flynn v. FCA US LLC*, No. 15-CV-0855-MJR-DGW, 2017 WL 3592040, at *4 (S.D. Ill. Aug. 21, 2017) (same).[4]

**G.      Relator's Claims Beyond the Statute of Limitations Should Be Dismissed**

Since Walmart filed its Memorandum, the Supreme Court has resolved the split among the Courts of Appeal regarding the appropriate statute of limitations to be applied in non-intervened *qui tam* FCA cases. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1511–12 (2019). Relator acknowledges in her Opposition that "[t]o the extent that Walmart seeks a court order limiting claims to those submitted within the actual, ten-year limitations period under *Cochise*, Relator has no objection in concept, although determining the precise application of the limitations period is premature at the pleadings stage." (Opp'n 29 n.13 (stating that in a False Claims Act case, "dismissal based on the statute of limitations is premature" given fact issues relating to equitable tolling and similar concepts (citing *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 827 (N.D. Ill. 2013))).)

---

[4] The Opposition contends that "Walmart is incorrect that all state false claims statutes have parallel pleading requirements" and then discusses The Texas Medicaid Fraud Prevention Act ("TMFPA"). Whatever the exact elements among the various state FCA statutes, however, they are still "subject to the heightened pleading requirements of Rule 9(b)." *See Sullivan*, 600 F.3d at 550–51.

-13-

*Goldberg*, however, dealt with a defendant's motion to dismiss the entire complaint based on the statute of limitations, and the court found that relators had alleged "an ongoing fraudulent scheme that Defendants allegedly continued to execute after [the statute of limitations period]. Accordingly, dismissal based on the statute of limitations is premature." 929 F. Supp. 2d at 827 (citation omitted). The *Goldberg* court actually noted that "[a] claim may be dismissed as untimely, however, if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Id.* at 816 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

Here, Relator's allegations stretch as far back as 2000, based solely upon the hearsay of an alleged comment made by another Walmart employee. (FAC ¶¶ 20, 171, 173, 179.) To the extent this Court finds that any of Relator's claims survive, such claims should not be permitted to proceed with the possibility of seeking damages over a nineteen (19) year period. Rather, this Court should dismiss any surviving claims to the extent such claims reach prior to ten years before the initiation of this action on June 1, 2018.

## **CONCLUSION**

For the foregoing reasons and those articulated in Walmart's earlier filed memorandum of law in support, Walmart respectfully requests that this Court enter an order dismissing Relator's claims with prejudice.

|  | Respectfully submitted, |
|---|---|
|  | WALMART INC. |
|  |  |
|  | By: *s/ James N. Law* |
|  |     By Its Attorneys |

Eric W. Sitarchuk (PA Bar No. 39082)
eric.sitarchuk@morganlewis.com
Ryan P. McCarthy (PA Bar No. 206961)
ryan.mccarthy@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5000
Facsimile:    +1.215.963.5001

        – and –

Howard J. Young (DC Bar No. 443359)
howard.young@morganlewis.com
Amanda B. Robinson (DC Bar No. 1017689)
amanda.robinson@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
Telephone:    +1.202.739.3000
Facsimile:    +1.202.739.3001

        – and –

Mark A. Cameli (WI Bar No. 1012040)
mcameli@reinhartlaw.com
Bryan K. Nowicki (WI Bar No. 1029857)
bnowicki@reinhartlaw.com
James N. Law (WI Bar No. 1088047)
jlaw@reinhartlaw.com

REINHART BOERNER VAN DEUREN S.C.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-8097


Dated: June 14, 2019