UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA, *ex rel.*
JENNIFER BUTH, *et al.*

    Plaintiffs,

    v.                                         Case No. 18-CV-840

WALMART INC.

    Defendant.

---

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Jennifer Buth brought this *qui tam* action[1] against Walmart Inc. on behalf of the United States, thirty-one individual states, the District of Columbia, and the City of Chicago.[2] (Docket # 1, Docket # 17.) Buth alleges that Walmart violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, and similar state statutes through various pharmacy practices. (Docket # 1, Docket # 17.) Walmart has moved for dismissal for failure to state a claim on which relief can be granted. (Docket # 38.) For the reasons below, Walmart's motion to dismiss will be granted in part and denied in part.

### LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must satisfy Rule 8(a) by providing a "short and plain statement of the claim

---

[1] Private individuals ("relators") may file civil actions on behalf of the United States ("*qui tam* actions") to recover money the government paid as the result of an FCA violation. *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011) (citing *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 912 (7th Cir. 2009)).

showing that the pleader is entitled to relief . . . in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley vs. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the allegations must suggest that the plaintiff is entitled to relief beyond the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). I must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). However, in deciding a motion to dismiss, I am not bound to accept as true legal conclusions couched as facts. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010).

FCA claims are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016) (citing *United States ex rel. Gross v. AIDS Research All.–Chi.*, 415 F.3d 601, 604 (7th Cir. 2005)). Under Rule 9(b), a plaintiff alleging fraud must state with particularity the circumstances constituting fraud—the "who, what, when, where, and how." *Presser*, 836 F.3d at 776 (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)) (internal quotation marks omitted). The precise details that must be included may vary depending on the facts of the case, and courts must "remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (citing *In re Rockefeller Center Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Nevertheless,

---

[2] The United States, thirty individual states, and the District of Columbia have elected not to intervene in this case at this time. (Docket # 48.) The City of Chicago forfeited its right to intervene, and the claim asserted on behalf of the State of Maryland was dismissed without prejudice. (*Id.*)

plaintiffs must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *Presser*, 836 F.3d at 776 (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 9.03[1][b], at 9-22 (3d ed. 2015)); *see also Pirelli*, 631 F.3d at 442.

## BACKGROUND

Buth is a licensed pharmacist who worked as a pharmacy manager at Walmart's New Berlin, Wisconsin pharmacy from July 2017 to May 2018. (Docket # 17 ¶¶ 27–28.) Walmart is a publicly traded Delaware corporation with its principal place of business in Arkansas, but doing business throughout all of the party states, the District of Columbia, and the City of Chicago. (*Id.* ¶ 63.)

Medicare is a government healthcare program that pays for reasonable and necessary healthcare for beneficiaries. (*Id.* ¶ 69.) Under Medicare Part D, the government pays a percentage of the cost of covered drugs dispensed with valid prescriptions. (*Id.* ¶¶ 78, 84.) The U.S. Department of Health and Human Services oversees the Medicare program and makes payments through the Center for Medicare and Medicaid Services ("CMS"). (*Id.* ¶ 72.) CMS does not pay pharmacies directly; it pays Medicare Part D "Plan Sponsors," typically private insurance companies, who pay pharmacies directly or through intermediaries known as Pharmacy Benefit Managers ("PBMs"). (*Id.* ¶¶ 78–79.) When a pharmacy dispenses a drug to a Medicare beneficiary, it submits an electronic claim to the Plan Sponsor and receives payment for the price minus any portion that must be paid by the beneficiary. (*Id.* ¶ 80.)

Walmart generates "Prescription Drug Event" ("PDE") records to support its claims for government payment, which it sends to CMS via PBMs and the Plan Sponsor. (*Id.* ¶ 87.)

A PDE record must include accurate data including the drug dispensed, the prescription number, the dispensing fee paid to the pharmacy, the cost of the drug, the quantity dispensed, and the provider who ordered the medication. (*Id.* ¶ 88.) That such data be "true, accurate, and complete" is a condition of payment under the Medicare Part D program. (*Id.* ¶ 89.)

Buth's first amended complaint alleges that Walmart pharmacies nationwide defrauded the government through four "schemes": 1) dispensing less medication than prescribed but billing for the full amount ("short-filling"); 2) dispensing and billing for more medication than necessary for a particular period ("days' supply"); 3) dispensing and billing for 90-day supplies instead of 30-day supplies without consent or clinical need ("conversion"); and 4) billing for medications dispensed with inaccurate expiration dates. (*Id.* ¶¶ 143–283.) Buth asserts that these alleged schemes resulted in the submission of false claims and materially false PDE data to CMS and improper retention of money owed to the government. (*Id.* ¶¶ 284–93.)

## ANALYSIS

The FCA is the primary vehicle used by the government for recouping losses suffered through fraud. *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 700 (7th Cir. 2015), *reinstated in part, superseded in part by United States v. Sanford-Brown, Ltd.*, 840 F.3d 445 (7th Cir. 2016). The FCA imposes liability on one who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [. . .]

> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1). "Knowingly" means that a person has actual knowledge of the falsity of the information or acts with purposeful ignorance or reckless disregard of its falsity, but not necessarily specific intent to defraud. *Sanford-Brown*, 788 F.3d at 700 (citing 31 U.S.C. § 3729(b)(1); *United States ex rel. Sheet Metal Workers Int'l Ass'n v. Horning Invs., LLC*, 828 F.3d 587, 593 (7th Cir. 2016)); *see also United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018) (mistake or negligence does not give rise to FCA claim). Falsity includes express misrepresentations and misrepresentation by omission. *See United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 789 (N.D. Ill. 2017). A "claim" under the statute "includes direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar,* 136 S. Ct. 1989, 1996 ((citing 21 U.S.C. § 3729(b)(2)(a)).

To establish civil liability under the FCA, a relator generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false. *Id.* (citing *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir. 2005)). The FCA also imposes a rigorous materiality requirement. *United States ex re. Thornton v. Pfizer Inc.*, No. 16-cv-7142, 2019 WL 1200753, at *5 (N.D. Ill. Mar. 14, 2019) (citing *Escobar*, 136 S. Ct. at 2002). "Material" means "having a natural tendency to

influence, or be capable of influencing, the payment or receipt of money or property." *Id.* (citing 31 U.S.C. § 3729(b)(4)).

Walmart argues that Buth's amended complaint should be dismissed because it fails to plead a violation of the FCA under Rule 8(a), to plead the particularized facts required by Rule 9(b), or to plead the required scienter and materiality. (Docket # 40.) Walmart also argues that Buth's state law claims should be dismissed, either because their pleading requirements are parallel to the FCA claims or because Buth has failed to plead a nationwide scheme with particularity. (*Id.* at 28–29.)

   1.   *Count One: Alleged Medication "Short-Filling" Scheme*

Buth's Count One alleges that Walmart violated 31 U.S.C. § 3729(a)(1)(A) by dispensing less medication than prescribed but billing the government for the full amount. (Docket # 17 ¶¶ 181–98, 260–65.) Buth alleges that "chronically untrained and time-pressured staff" often "short-fill" medication, and Walmart's standard operating procedures do not require pharmacy managers to re-count the medication to correct such errors. (*Id.* ¶¶ 144, 181–85.) Buth provides six examples of claims for short-filled medications submitted by Walmart's New Berlin, Wisconsin pharmacy, including dates, beneficiary initials, and prescription numbers, and avers that even after beneficiaries confirmed that their medications were short-filled, Walmart did not correct the claims. (*Id.* ¶ 196.) Buth alleges that she found several thousand dollars weekly in overages caused by such short-filling at the New Berlin, Wisconsin pharmacy. (*Id.* ¶¶ 191–92.) Buth asserts that both pharmacy managers and beneficiaries brought these issues to Walmart's attention, and Walmart's corporate management was aware that managers routinely identified such "overages" and false claims. (*Id.* ¶¶ 144, 181,

6

193–94.) Buth further alleges that Walmart profited from short-filling by using a computerized inventory system to replace the electronic inventory count with the actual on-the-shelf count, which enabled Walmart to re-sell and re-bill for medication that had already falsely been billed to the government. (*Id.* ¶¶ 184–88.)

Billing for medication not actually dispensed clearly satisfies the first two prongs of the test for an FCA violation: (1) a claim to the government (2) that is false. As for scienter, the actual short-filling appears to have been the result of mistakes or negligence on the part of pharmacy staff. Buth does not allege that Walmart, or any Walmart employee, knew at the time a particular claim was submitted that the full amount of medication had not been dispensed. Buth does, however, allege facts that at least plausibly suggest that Walmart submitted claims with willful ignorance or reckless disregard of their falsity. Buth alleges that short-filling is one of the most common types of medication errors and she and others raised red flags with management about it, yet Walmart maintained deficient standard operating procedures and poor training that failed to prevent it and in fact enabled it. (*Id.* ¶¶ 181–84.) To the extent Walmart knew short-filling was a problem as Buth alleges and submitted claims for medications dispensed without proper safeguards against short-filling, Walmart plausibly could have acted in willful ignorance of the truth or falsity of these claims. Discovery may reveal otherwise; at this stage, however, Buth has alleged sufficient facts supporting the inference that Walmart deliberately ignored concerns about short-filling. Fed. R. Civ. P. 9(b) ("[K]nowledge . . . and other conditions of a person's mind may be alleged generally."); *see United States v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 837–38 (6th Cir. 2018) (allegations supported inference that defendants were on notice of

compliance problems with claim-submission process but failed to conduct an inquiry and instead repeatedly pushed their employees to ignore problems in a rush to get the claims submitted). And as for materiality, it is reasonable to infer at this stage that the government would not choose to pay for medications that are not actually dispensed.

Walmart argues that, at most, Buth has pleaded that she failed in her own responsibility to supervise pharmacy staff and implement company policy requiring her to oversee the filling process and correct negligent miscounting. (Docket # 40 at 18–19.) Walmart also argues that none of the six examples Buth provides states an FCA violation with sufficient particularity, because the pharmacy might have corrected the errors by providing the missing medication to the customers, in which case there would have been no false claims. (*Id.* at 19.) But a complaint need not respond to every potential defense in order to state a claim for an FCA violation. These arguments are more appropriate for summary judgment when more facts are available.

Walmart also argues that Buth's reliance on *United States ex rel. Hunt v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp 2d 430, 434–35 (E.D. Pa. 2004), is misplaced. (Docket # 54 at 13–14.) The allegations of short-filling in *Hunt* were indeed more compelling: the pharmacy allegedly used an automatic prescription-dispensing system that was known to routinely short-fill prescriptions. *Id.* Buth's allegation that under-trained, time-pressured staff often short-fill prescriptions requires significantly more inference. Still, Buth is entitled to reasonable inferences at this stage. Whether Buth can prove that Walmart turned a blind eye to potentially false claims arising from short-filling in violation of the FCA remains to be seen. At this juncture, however, Buth's allegations suffice to state a claim.

Because Count One satisfies the pleading requirements for an FCA claim, I decline to dismiss it at this stage.

2. *Count Two: Alleged "Days' Supply" Scheme*

Buth's Count Two alleges that Walmart violated 31 U.S.C. § 3729(a)(1)(A) by billing insulin and topical medications to the government as a patient's "days' supply" of medication, when the amount was far more than the patient's actual "days' supply." (Docket # 17 at 266–71.) Buth explains that Medicare billing requirements direct pharmacists to calculate the amount of insulin a patient requires for a certain number of days (usually thirty) based on the prescription and determine how many insulin injection pens are needed to provide that "days' supply," then round down to the nearest full injection pen. (*Id.* ¶ 206.) Buth alleges that Walmart staff routinely skip the calculation and instead dispense entire boxes of insulin injection pens, which they then bill as 30-days' supplies, even when a patient requires less than a full box of pens for thirty days. (*Id.* ¶¶ 4, 202–08.) For example, a patient who requires only three insulin injection pens in order to use insulin as prescribed for thirty days would be given a full box of five pens, and Walmart would bill for the full box as a "30-days' supply." (*Id.* ¶¶ 147, 200, 208, 210.) Buth offers two examples from Walmart's New Berlin, Wisconsin pharmacy, and states that Walmart did not reimburse the government for these claims. (*Id.* ¶¶ 211, 222.) Buth also avers that an employee from Walmart's Waukesha, Wisconsin pharmacy stated that they do not break open insulin pen boxes at their store, (*id.* ¶ 218), and that pharmacies in three cities in Arkansas, Kentucky, and North Carolina either do not calculate days' supply of insulin properly or have only recently begun to break open boxes of insulin pens (*id.* ¶ 221).

I find that Buth has not pleaded the requisite scienter for this claim. Buth argues that Walmart's policy of "rapid-fire dispensing" made it "impossible" for employees to properly calculate and dispense these medications. Even if this were true, there is no indication in the amended complaint that Walmart was aware of this practical reality. Buth does not indicate that any employee submitted a claim he or she knew or should have known over-stated the amount required for a patient's "days' supply." Did the employee who over-filled the prescription also submit the claim? If not, did the employee who submitted the claim know that the employee who filled it had not performed the required calculations and/or had dispensed more than necessary? Buth does not answer these critical questions. The most factual support Buth can muster for her scienter allegations is a Walmart guideline explaining how to properly dispense "days' supplies" as part of a series of "answers to common questions" (*id.* ¶ 220), but this supports only a limited inference that employees had questions about dispensing days' supplies. It does not support an inference that Walmart was aware of actual over-dispensing, let alone the rampant, brazen over-dispensing Buth alleges.

This case is easily distinguishable from the recently settled case Buth relies on, *United States ex rel. Rahimi v. Walgreens Boots Alliance, Inc.*, No. 15 Civ. 5686 (PAC) (S.D.N.Y. 2019). In *Rahimi*, a pharmacy chain had programmed its software to dispense only full boxes of insulin pens regardless of the patient's "days' supply." (Docket # 54-1 at 121–44.) In this case, Buth does not allege that over-dispensing "days' supplies" was Walmart's official policy, or even that Walmart management was aware of a single instance of such over-dispensing. Buth's assertion that this was "Walmart's unofficial but regularly followed policy," even if true, is insufficient to allege the required scienter for an FCA claim.

3. *Count Three: Alleged "Conversion" Scheme*

Buth's Count Three alleges that Walmart violated 31 U.S.C. § 3729(a)(1)(A) by converting prescriptions with sufficient remaining refills from 30-day supplies to 90-day supplies and then billing the government for 90-day supplies, whether or not patients consented or the pharmacist had reason to believe the patients needed 90-day supplies. (Docket # 17 ¶¶ 272–77.) Buth reports that Walmart staff routinely converted prescriptions without patient consent or reviewing the patients' prescription history to determine if there were compliance problems that might justify the conversion. (*Id.* ¶ 244–45, 249.) Buth points to emails from Walmart Clinical Services Managers acknowledging "high amounts [of changes] at certain stores" and that some staff are "just signing off to complete" the switch and "not properly doing the claims." (*Id.* ¶¶ 231–36.) One email tells staff to "do these [conversions] properly," to "make the calls" to and "have the discussions" with patients. (*Id.* ¶ 235.) Buth also asserts that pharmacy staff, at the direction of management, routinely failed to comply with state laws governing how and when pharmacists may convert 30-day supplies to 90-day supplies. (*Id.* ¶¶ 241–53.) Buth gives eight examples from Walmart's New Berlin, Wisconsin store of staff allegedly improperly converting 30-day supplies to 90-day supplies, which were thereafter filled and billed. (*Id.* ¶ 245.)

Walmart argues that Buth has not alleged any false statement to the government concerning these conversions. (Docket # 40 at 11–12.) Buth responds that the "implied false certification" theory, articulated in *Escobar*, 136 S. Ct. at 1999, applies. (Docket # 51 at 33–34.) Under the "implied false certification" theory, a defendant who fails to mention

violations of statutory, regulatory, or contractual requirements may be liable under the FCA if those omissions render the defendant's representations misleading with respect to the goods or services provided. *Escobar*, 136 S. Ct. at 1999. In *Escobar*, a mental health facility defrauded the Medicaid program by submitting reimbursement claims for specific services provided by specific types of professionals, but failed to disclose serious violations of regulations pertaining to staff qualifications and licensing requirements. *Id.* at 1999–2001. Here, Buth argues that Walmart was violating federal and state standards by converting customers' 30-day prescriptions to 90-day prescriptions without patient consent, reviewing prescription history, or exercising professional judgment. (Docket # 51 at 33–34.) Because Medicare regulations require Walmart to comply with federal and state standards, Buth argues that Walmart's failure to do so constituted a misrepresentation to the government in violation of the FCA. (*Id.*)

The "implied false certification" theory does not fit the facts of this case. In *Escobar*, the defendant's failure to adhere to regulations resulted in a material misrepresentation about the goods or services themselves: the regulatory violations led the government to believe it was paying for one thing, when it was actually paying for something else. Here, by contrast, the government was led to believe it was paying for 90-day supplies of medications with valid prescriptions, and that is precisely what it was paying for. Put another way, on the facts alleged, the conversion of the prescriptions was not material to the government's decision to pay the claims. The "implied false certification" theory therefore provides no basis for FCA liability in this case. *Cf. Lisitza*, 276 F. Supp. at 788–802 (filling prescriptions with more expensive forms of drugs than originally prescribed did not constitute fraudulent concealment under *Escobar*, nor was it false or misleading under the FCA). For these

reasons, I find that the "conversion scheme" in the amended complaint does not state a claim under the FCA.

    4.    *Count Four: Alleged "Expiration Date" Scheme*

Buth moves to voluntarily dismiss this count. (Docket # 51 at 12, 38.) Accordingly, the Count Four "expiration date" claim will be dismissed without prejudice.

    5.    *Count Five: Alleged Falsifying PDE Data*

Count Five alleges that Walmart violated the 31 U.S.C § 3729(a)(1)(B) by falsifying prescription drug event (PDE) data in support of false claims for prescription medications. (Docket # 17 ¶¶ 284–88.) This count is dismissed insofar as it concerns the alleged "days' supply," "conversion," and/or "expiration date" schemes for the reasons already discussed. It is not dismissed only insofar as it may relate to Count One.

    6.    *Count Six: Alleged Concealing Obligation to Pay the Government*

Count Six alleges that Walmart violated 31 U.S.C. § 3729(a)(1)(G), which imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." (*Id.* ¶¶ 289–93.) Buth alleges that Walmart's failure to correct claims for allegedly "short-filled" medications and return payments amounted to knowing concealment of money owed to the government. (*Id.*) Buth alleges specific instances of customers and pharmacy staff notifying Walmart of short-filling, but alleges that Walmart did not correct the claims or reimburse the government for the overpayments. Because I find that Buth has alleged facts sufficient to state a claim under 31 U.S.C. § 3729(a)(1)(G) with the alleged "short-filling" scheme, I will

not dismiss it with regard to that alleged scheme. I will, however, dismiss it with regards to the other alleged schemes for the reasons already discussed.

       7.       *Counts Seven through Thirty-Seven: State Law Claims*

Walmart does not address the remaining counts individually, each of which alleges a claim under a state version of the FCA. Rather, Walmart argues that each state law is construed consistent with the FCA, and thus each claim fails for the same reasons Buth's FCA claim fails. (Docket # 40 at 28–29.) Walmart also argues that Buth failed to plead a nationwide scheme with the particularity required under Rule 9(b), because Buth makes no specific allegations based on personal knowledge beyond her own Wisconsin pharmacy. (Docket # 40 at 26–27 (citing *United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 895–97 (E.D. Wis. 2016)).)

Buth responds that her state law claims survive to the extent her FCA claims survive. She also argues that the amended complaint adequately alleges the existence of a nationwide scheme, pointing to cases in which courts have denied motions to dismiss even when the relator's knowledge was based on experiences at a single store or at just a few locations. (Docket # 51 at 35 (citing *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 18-CV-673-GKF-FHM, 2019 WL 1086363, at *14 (N.D. Okla. Mar. 7, 2019); *United States ex rel. Schutte v. Supervalu, Inc.*, 218 F. Supp. 3d 767, 774 (C.D. Ill. 2016); *United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 177–78 (E.D. Pa. 2012); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1340, 1348 (N.D. Ga. 2015); *United States ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*, No. 09-10179, 2012 WL 8667597, at *2 (D. Mass. Mar. 6, 2012)).)

In cases alleging widespread fraud, it is true that courts typically require only representative examples to be pleaded with a high level of particularity. *See United States ex rel. Morgan v. Champion Fitness, Inc.*, No. 13-cv-1593, 2018 WL 5114124, at *3 (collecting cases). However, there must also be sufficient facts to support a reasonable inference that the fraud was, in fact, widespread. *See Kroening*, 155 F. Supp. 3d at 895–97 (assertion that relator had spoken with representatives in fifteen other states was insufficient to satisfy Rule 9(b)) (citing *U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 270 (D. Mass. 2015); *U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, 2014 WL 3385189, at *33 (S.D. Miss. July 9, 2014); *U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375, at *6 (S.D. Miss. Mar. 30, 2013); *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011)).

In connection with the only surviving claim, the alleged "short-filling" scheme, Buth alleges six examples of "short-filling" from one Wisconsin pharmacy. (Docket # 17 ¶¶ 196.) Buth has not pleaded that Walmart management was aware of the short-filling problem and failed to remedy it anywhere other than Wisconsin. Compared to the cases Buth cites, this is not particularly compelling. *See, e.g., Strauser*, 2019 WL 1086363 at *14 (allegations included that managers at company headquarters programmed nationally uniform software to bill fraudulent charges); *Schutte*, 218 F. Supp. 3d at 774 (allegations included that a pharmacy chain had official multi-state policy of selling medications at discounts but reporting undiscounted prices to the government); *Spay*, 913 F. Supp. 2d at 173–78 (plaintiff identified over 49,000 problematic claims in at least three states and Puerto Rico); *Bibby*, 165 F. Supp. 3d at 1348 (relators reliably described violations occurring in seven states, including four of

the ten most populous states in the nation). Therefore, I find that Counts Seven through Thirty-Seven fail to state claims on which relief can be granted.

        *8.      Count Thirty-Eight: Wisconsin False Claims for Medical Assistance Act*

Buth alleges that Walmart violated the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. § 20.931. On July 12, 2015, the Wisconsin legislature repealed the Wisconsin False Claims Act in its entirety. *See* 2015 Wis. Act 55, § 945n. While Walmart could be liable for fraudulent activities committed before the repeal date, Wis. Stat. § 990.04, Buth has not alleged with particularity any fraudulent activity occurring before July 12, 2015. The specific examples of "short-filling" she provides all occurred in 2017 and 2018 (Docket # 17 ¶ 196), the standard operating procedures she cites are both dated January 2018 (Docket # 40-3, 40-4), and Buth alleges that Walmart pharmacies experienced a dramatic turnaround in profitability between 2015 and 2017 due to implementation of the alleged schemes Buth complains of (Docket # 17 ¶¶ 9–13). Because Buth has not pleaded sufficient facts to support a reasonable inference that Walmart engaged in any fraud prior to July 12, 2015, Count Thirty-Eight fails to state a claim upon which relief could be granted.

        *9.      Statute of Limitations*

Walmart moves the court to dismiss any surviving claims to the extent they reach prior to ten years before the initiation of this action on June 1, 2018.[3] (Docket # 54 at 14.) Buth indicates that she understands and accepts that claims must be limited to those within the ten-year limitations period, but objects to any dismissal on this ground as premature. I

---

[3] Walmart originally argued that the FCA imposed a six-year statute of limitations, on a reading of 31 U.S.C. § 3731(b) that has since been rejected by the U.S. Supreme Court. (Docket # 40 at 29–30.) *See Cochise Consultancy, Inc., vs. United States, ex rel. Hunt*, 139 S. Ct. 1507 (2019) (abrogating *United States ex rel. Sanders v. North Am. Bus Industries, Inc.*, 546 F. 3d 288 (4th Cir. 2008); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F. 3d 702 (10th Cir. 2006)).

agree, and decline to dismiss any part of Buth's amended complaint on statute of limitations grounds at this stage. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (citing *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004) (collecting authority)) ("Because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6).").

## CONCLUSION

Counts Two, Three, and Seven through Thirty-Eight of Buth's amended complaint fail to state any claim on which relief can be granted. Therefore, dismissal of these counts is appropriate. Counts Five and Six also fail to state a claim except insofar as they relate to Count One.

Although Walmart argues for dismissal with prejudice because it believes any attempt to save the claims would be futile (Docket # 40-1 at 30), I find that Buth could remedy at least some of the shortcomings identified herein, and the prejudice to Walmart of allowing this would be minimal. I therefore find it appropriate to dismiss the relevant counts without prejudice.

Finally, Count Four will be dismissed without prejudice at Buth's request.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Walmart's Motion to Dismiss (Docket # 38) is **GRANTED IN PART AND DENIED IN PART**. Counts Two, Three, Four, and Seven through Thirty-Eight are **DISMISSED WITHOUT PREJUDICE**. Counts Five and Six are **DISMISSED WITHOUT PREJUDICE** except insofar as they relate to Count One.

**IT IS FURTHER ORDERED** that Buth may file a second amended complaint, if desired, within thirty (30) days of this Order.

Dated at Milwaukee, Wisconsin this 13th day of August, 2019.

BY THE COURT

*s/Nancy Joseph*_____
NANCY JOSEPH
United States Magistrate Judge