# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES of AMERICA, *ex rel.*
JENNIFER BUTH, *et al.*,

        Plaintiffs,

     v.                         Case No. 2:18-cv-00840-NJ

WALMART INC.,                Magistrate Judge Nancy Joseph

        Defendant.

## WALMART INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................ 2

    A.    Factual Background ................................................................ 2

    B.    Relator's Allegations ............................................................. 3

LEGAL STANDARD ...................................................................................... 3

    A.    Motion to Dismiss Standard ................................................. 3

    B.    Rule 9(b) Standard ............................................................... 4

ARGUMENT .................................................................................................. 5

    A.    FCA Requirements ............................................................... 5

    B.    Relator's Days' Supply Allegations Fail ............................. 7

        1.    Insulin Pens .............................................................. 7

            a.    The SAC Fails to Plead Scienter ................. 7

                (1)    Buth's Speculative Allegations are Insufficient to State a FCA Claim ................. 9

                (2)    The SAC's Reliance on Audits Do Not Raise a Plausible Inference of Scienter ................. 12

            b.    The SAC Fails to State the Who, What, Where, When and How of the Alleged Fraud………………………………… 14

            c.    The SAC Fails to Plead Materiality ............. 15

        2.    Triamcinolone Acetonide Cream ............................ 18

    C.    Relator Fails to Allege a Nationwide Scheme .................... 19

        1.    The SAC Fails to Allege a Nationwide "Short-Filling" Scheme ............ 20

        2.    The SAC Fails to Any Well-Pleaded Facts to Support a Nationwide "Days-Supply" Scheme Concerning Insulin Pens or Triamcinolone Cream ............ 20

    D.    Relator's State-Law Claims Should Be Dismissed............... 23

    E.    Relator's "Days' Supply" Scheme Should Be Dismissed with Prejudice .......... 24

CONCLUSION ............................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 4, 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 4, 10, 13, 23

*Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926 (S.D. Ill. 2006) ............................... 15, 16

*Flynn v. FCA US LLC*, No. 15-CV-0855-MJR-DGW, 2017 WL 3592040 (S.D. Ill. Aug. 21, 2017) ................................................................................................................... 24

*Garcia v. City of Chicago*, 24 F.3d 966 (7th Cir. 1994) ............................................. 24

*Grabcheski v. Am. Int'l Grp., Inc.*, 687 F. App'x 84 (2d Cir. 2017) ........................... 16

*Hemmer Grp. v. SouthWest Water Co.*, 527 F. App'x 623 (9th Cir. 2013) .................. 16

*Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318 (11th Cir. 2009) ............................... 16

*In re Crude Oil Commodity Litig.*, No. 06 CIV. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ...................................................................................................... 21

*In re Donald J. Trump Casino Securities Litig.*, 7 F.3d 357 (3d Cir. 1993) ................ 16

*Khan v. Bd. of Educ. of City of Chicago*, No. 16 CV 8668, 2018 WL 1156202 (N.D. Ill. Mar. 5, 2018) ................................................................................................................... 24

*Kubiak v. City of Chicago*, 810 F.3d 476 (7th Cir. 2016) ............................................. 3

*Minzer v. Keegan*, 218 F.3d 144 (2d Cir. 2000) ......................................................... 15

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8 (1st Cir. 2009) ...... 24

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011) ......................................................................................... 5, 14, 21, 22

*Sampson v. Wash. Mut. Bank*, 453 F. App'x 863 (11th Cir. 2011) ............................. 16

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029 (5th Cir. 2010) ...... 16

*Sullivan v. Leor Energy, LLC*, 600 F.3d 542 (5th Cir. 2010) ...................................... 24

*U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, 2014 WL 3385189 (S.D. Miss. July 9, 2014) ...................................................................................................... 19

*U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709 (N.D. Tex. 2011) ................ 20

*U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 (S.D. Miss. Mar. 30, 2013) ......... 19

*United States ex rel. Berkowitz v. Automation Aids, Inc*., 896 F.3d 834 (7th Cir. 2018) ...... passim

*United States ex rel. Buth v. Walmart Inc*., No. 18-CV-840, 2019 WL 3802651 (E.D. Wis. Aug. 13, 2019) ......................................................................................................................... passim

*United States ex rel. Cieszyski v. LifeWatch Servs.*, No. 13 CV 4052, 2015 WL 6153937 (N.D. Ill. Oct. 19, 2015) .................................................................................................................. 6

U*nited States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002) ....................................................................................................................................... 14

*United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 WL 3583980 (N.D. Ill. July 18, 2014) ..................................................................................................................... 14

*United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003) ................ 14

*United States ex rel. Gray v. UnitedHealthcare Ins. Co.*, No. 15-cv-7137, 2018 WL 2933674 (N.D. Ill. June 12, 2018) ........................................................................................................... 6

*United States ex rel. Hubert v. Bd. of Educ.*, No. 16-C-4336, 2018 WL 6248827 (N.D. Ill. Nov. 29, 2018) ..................................................................................................................................... 6

*United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964 (S.D. Ind. 2018) ...................................................................................... 18, 19

*United States ex rel. Kroening v. Forest Pharmaceuticals, Inc.*, 155 F. Supp. 3d 882 (E.D. Wis. 2016) ...................................................................................................................................... 19, 23

*United States ex rel. Laucirica v. Stryker Corp.*, No. 1:09-CV-63, 2010 WL 1798321 (W.D. Mich. May 3, 2010) ................................................................................................................... 23

*United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779 (N.D. Ill. 2017) ............... 6

*United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009) ........................ 21

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770 (7th Cir. 2016) ......................................................................................................................................... passim

*United States ex rel. Rahimi v. Walgreens Boots Alliance, Inc.*, No. 15 Civ. 5686 (PAC) (S.D.N.Y. 2019) ........................................................................................................................ 11

*United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791 (8th Cir. 2011) ...................................... 16

*United States v. Pfizer Inc.*, No. 16-CV-7142, 2019 WL 1200753 (N.D. Ill. Mar. 14, 2019) ...... 15

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) .......... 6, 15

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013)............................................................. 10, 17

**Rules**

Federal Rule of Civil Procedure 9 ................................................................................................ 4

In a thirty-eight count First Amended Complaint ("FAC"), Relator Jennifer Buth alleged that pharmacy staff at Walmart Inc. ("Walmart") caused violations of the False Claims Act ("FCA") through four different pharmacy practices. After Walmart moved to dismiss the FAC, Buth voluntarily dropped one of the four categories of allegations. (Docket # 51 at 4 n.3.) On Walmart's motion, the Court dismissed nearly every count of the FAC, rejecting each of the remaining alleged schemes except for claims related to medication "short-filling." The Court also rejected Buth's claim of nationwide liability. *See United States ex rel. Buth v. Walmart Inc.*, No. 18-CV-840, 2019 WL 3802651 (E.D. Wis. Aug. 13, 2019).

Now on a third bite at the apple, Buth brings a Second Amended Complaint ("SAC") that alleges two violations related to: (1) short-filling prescription medications (the "Short-Fill Allegations"), and (2) dispensing insulin pens and topical creams (the "Days' Supply Allegations").[1] Buth abandons another prior claim arising from Walmart's provision of 90-day supplies of certain medications. (*Compare* FAC ¶ 1 *with* SAC ¶ 1.)

Buth again confuses volume for substance. Though long on words, the complaint remains woefully short on facts, resting instead on impermissible conclusions and speculation. Just as in the largely dismissed FAC, Buth alleges sweeping schemes spanning nearly twenty years at each and every one of Walmart's 3,500 pharmacies nationwide—all despite the fact that Buth worked in only a ***single*** Wisconsin pharmacy ***for less than one year***. (SAC ¶¶ 29, 104, Counts Five–Thirty-Six.) Again, she alleges that nationwide scheme "based upon her independent and direct knowledge." (*Id.* at ¶¶ 30, 168, 170, 195, 314.)

---

[1] As with the FAC, the SAC includes various training-related allegations, but Buth again fails to allege any independent FCA claims based on those allegations, as explained more fully in Walmart's previous motion. (*See* Docket # 40, at 19–21.)

Buth's renewed allegations remain well short of the pleading requirements of the Federal Rules of Civil Procedure, for multiple separate and independent reasons. The complaint still relies on conclusions rather than the particularized facts the law requires. It still repeatedly contradicts itself. And it omits key elements of a FCA violation. For these reasons, the SAC should be dismissed with prejudice as to the Days' Supply Allegations. Having already had three chances to plead a viable claim, and having alleged all that she could know (and much that she could not), any further amendment as to that claim would be futile, so the claims related to the Days' Supply Allegations should be dismissed with prejudice. Finally, because Buth's renewed complaint provides no further support for the Short-Fill Allegations, the Court should dismiss with prejudice any claims premised on nationwide liability with respect to those allegations, consistent with the Court's prior opinion. *See Buth*, 2019 WL 3802651, at *8.

## BACKGROUND

### A. FACTUAL BACKGROUND

During her very brief period with Walmart, Relator Jennifer Buth was a pharmacist licensed in the State of Wisconsin. (SAC ¶ 29.) Buth was a Pharmacy Manager in Walmart's New Berlin, Wisconsin pharmacy from July 2017 until her resignation in May 2018. (*Id.*) Pharmacy Managers, such as Buth, are designated Pharmacists-in-Charge ("PICs") under state law in Walmart's pharmacies. (*Id.* at ¶ 112.) As such, they are legally responsible for overseeing all pharmacy operations, including the prescription-filling process, inventory control, and supervision of staff Walmart assigns to its retail pharmacy operations. (*Id.*)

A month after resigning from Walmart, Buth initiated this *qui tam* action. (Docket #1.) She then filed her FAC six months later in December 2018, shortly before this case was unsealed in January 2019. (Docket # 17, 18.) The United States, thirty individual states, and the District of Columbia elected not to intervene. (Docket # 19, 48.) The City of Chicago forfeited its right

to intervene, and the claim asserted on behalf of the State of Maryland was dismissed without prejudice. (Docket # 48.)

On August 13, 2019, the Court granted in part and denied in part Walmart's motion to dismiss, specifically dismissing all claims except for Count One (Buth's alleged medication "short-filling" claim) and Counts Five and Six insofar as they related to Count One. *Buth*, 2019 WL 3802651, at *8. Buth filed the SAC on October 3, 2019. (Docket # 58.)

## B.    RELATOR'S ALLEGATIONS

Buth purports to bring this *qui tam* action on behalf of the United States, thirty-one states, the District of Columbia, and the City of Chicago for damages and civil penalties arising out of Walmart's allegedly fraudulent conduct nationwide, dating from 2000 through the present. (SAC ¶¶ 20–21.)

Buth now alleges two "schemes":

1. Short-Fill Allegations: Buth claims Walmart employees at times failed to fully fill prescription medication (*i.e.*, filled prescription bottles with fewer pills than prescribed), and in doing so caused false claims to be submitted to government programs for more medication than was dispensed, and that this allowed Walmart to resell and double-bill the leftover medication. (*Id.* at ¶ 173.)

2. Days' Supply Allegations: Buth claims Walmart employees at times caused false claims to be submitted to government programs for insulin injection pens and triamcinolone acetonide cream for an amount in excess of the days-supply limitations of government program payors. (*Id.*)

## LEGAL STANDARD

## A.    MOTION TO DISMISS STANDARD

When evaluating a motion to dismiss, the Court must view the factual allegations in the complaint as true and in the light most favorable to the plaintiffs. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court is not, however, required to make unwarranted

-3-

deductions of fact or accept conclusory allegations of law as true. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557). The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. That standard is met only by factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Where the allegations are merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," the plaintiff's claim will not survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555. In other words, a claim has facial plausibility only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B.  RULE 9(B) STANDARD

Because Buth's claims are premised on alleged fraud under the FCA, they are subject to the heightened pleading requirements of Rule 9(b). *Berkowitz*, 896 F.3d at 839. Under Rule 9(b), a plaintiff "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Buth must describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *Berkowitz*, 896

F.3d at 839 (citation omitted).  Relators, like Buth, must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (citation omitted).  To that end, "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).  And allegations based on hearsay constitute information and belief.  *Id.* (citation omitted).  "The heightened pleading requirement in fraud cases 'forces the plaintiff to conduct a careful pretrial investigation' to minimize the risk of damage associated with a baseless claim."  *Berkowitz*, 896 F.3d at 840 (citation omitted).

## ARGUMENT

### A.     FCA REQUIREMENTS

To state an FCA claim,[2] Buth "must allege the following essential elements with particularity: '(1) the defendant made a statement in order to receive money from the

---

[2] Since Buth has alleged that these purported schemes date back to 2000 and extend through the present, (SAC ¶ 21), "[t]he fraudulent conduct alleged in [Relator's] complaint appears to be governed by both the current FCA statute, which was amended in 2009 by the Fraud Enforcement Recovery Act, and the pre-amendment statute." *Berkowitz*, 896 F.3d at 840.  As articulated by the *Berkowitz* court:

> Prior to the amendment, the FCA limited liability to an individual who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government."  Under the current version of the statute, which applies only to claims pending on or after June 7, 2008, a person is liable under the FCA if he "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  Both versions of the FCA define "knowledge" or "knowingly" to encompass the conduct of an individual who either has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information."

896 F.3d at 840 (internal citations omitted).

government; (2) the statement was false; and (3) the defendant knew the statement was false.'" *Id.* (citations omitted). In addition, Buth must allege, with particularity, that any noncompliance with a legal requirement was material to the government's payment decision—a "rigorous" requirement. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002–03 (2016); *United States ex rel. Hubert v. Bd. of Educ.*, No. 16-C-4336, 2018 WL 6248827, at *9 (N.D. Ill. Nov. 29, 2018). As this Court noted in its prior opinion, mistake or negligence does not give rise to a FCA claim. *Buth*, 2019 WL 3802651, at *3 (citing *Berkowitz*, 896 F.3d at 842).

In cases such as the one present before this Court, a party can bring FCA claims under two theories: express false certification and implied false certification—"in essence, falsity resulting from express misrepresentations or from misrepresentation by omission." *United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 789 (N.D. Ill. 2017).

Under an express false certification theory, a plaintiff must allege that a defendant "falsely and specifically certified that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." *United States ex rel. Gray v. UnitedHealthcare Ins. Co.*, No. 15-cv-7137, 2018 WL 2933674, at *4 (N.D. Ill. June 12, 2018) (quoting *United States ex rel. Cieszyski v. LifeWatch Servs.*, No. 13 CV 4052, 2015 WL 6153937, at *6 (N.D. Ill. Oct. 19, 2015)). An implied false certification theory, on the other hand, applies when "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements," and then those "omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Escobar*, 136 S. Ct. at 1999. While Buth does

not specify whether she brings her FCA claims under an express or implied false certification theory, the SAC fails under either theory.

**B.      RELATOR'S DAYS' SUPPLY ALLEGATIONS FAIL**

**1.      Insulin Pens**

Buth's amendments to her complaint focus on the Days' Supply Allegations, but the additions are little more than fluff. Buth fails to answer the Court's concerns about her deficient pleading of Walmart's scienter, and the new allegations provide none of the particularity—the who, what, when, where, and how—that the law requires as to the "rigorous" element of materiality. The lion's share of new allegations is a lengthy account of Walmart's prescription intake and dispensing process. While that narrative is detailed, it fails to show any fraud or to address the deficiencies the Court found when it dismissed the claim. In fact, it only demonstrates Walmart's nationwide and proper procedures.

a.      The SAC Fails to Plead Scienter

When addressing this claim in its opinion, this Court found that Buth had "not pleaded the requisite scienter." *Buth*, 2019 WL 3802651, at *5. The Court observed that nothing in the FAC showed that Walmart knew its supposed "policy of 'rapid-fire dispensing' made it 'impossible' for employees to properly calculate and dispense" insulin pens to customers according to the correct days-supply. *Id.* The Court further highlighted that Buth did "not indicate that any employee submitted a claim he or she knew or should have known over-stated the amount required for a patient's 'days' supply.'" *Id.*

In a tortured attempt to overcome these shortcomings, the SAC resorts to bald conclusions and hearsay, all of which are impermissible and insufficient under applicable law. For example, the SAC summarily concludes (without any explanation) that "Walmart's corporate policy and practice has been to dispense at least one full box of five insulin pens for each insulin

prescription, regardless of the amount prescribed by the physician and regardless of the number of days' supply that the Government health program would cover." (SAC ¶ 205.) The SAC fails to specify critical information, such as (1) what the corporate policy was, and (2) when such a policy was promulgated and how. The SAC also simply asserts that "Walmart supervisors regularly require their employees to falsify days' supply in claims submitted to Government health programs" and that "[t]his conduct is made part of the routine practice at Walmart stores nationwide." (*Id.* at ¶ 208.) The SAC then concludes that, because Walmart pharmacies have been subject to "audits beginning as early as 2015, Walmart is and has been fully aware that days' supply is material to Government payors' decision to pay claims for insulin and … topical creams." (*Id.* at ¶ 211.) But none of these allegations are sufficient.

The SAC claims that Walmart is aware of this fraudulent practice because of audits, but it fails to describe in any detail whatsoever what those audits cover (whether they involve insulin pens at all), who conducts the audits, what were the audit results as to days' supply, and who receives the results of such audits. Buth also alleges that Walmart supervisors "regularly require their employees to falsify days' supply" but then fails to provide a single example of such an event occurring. The SAC provides no names, no dates, and no store numbers. Buth alleges that this conduct is routine practice at thousands of Walmart stores nationwide, but can only provide *two* purported examples, both of which are from Buth's own New Berlin store where she was the pharmacist-in-charge and are from within the same month. (*Id.* at ¶ 266.)

In its prior opinion, the Court pointed out that "Buth does not indicate that any employee submitted a claim he or she knew or should have known over-stated the amount required for a patient's 'days' supply.'" *Buth*, 2019 WL 3802651, at *5. To that end, the Court questioned whether the employee who allegedly over-filled the prescription also submitted the claim, and if

not, whether the employee who submitted the claim knew that the employee who filled it had not performed the required calculations and/or had dispensed more than necessary. *Id.* Buth fails to provide this Court with a straight answer to either of these questions. And the SAC strongly suggests that the answer is "No" to both. When one attempts to parse this opaque section of the SAC in search of a direct answer to the Court's questions, it is apparent that, in the SAC's version of events, the employee who filled the prescription did ***not*** also submit the claim. (*See* SAC ¶ 242) (referring to Input Techs as "counterparts" to Fill Techs); (*id.* at ¶ 269) (indicating that Walmart employees perform one role or the other depending on the needs of a particular shift). The Input Tech completes the Input (*i.e.*, billing) procedure while another employee (the Fill Tech) completes the Fill procedure. (*Id.* at ¶ 215.)

(1)     Buth's Speculative Allegations are Insufficient to State a FCA Claim

Having acknowledged that the Input Tech and Fill Tech are separate employees, Buth resorts to bald speculation in order to support her claims, stating that "[b]ecause Walmart's employees acting as pharmacy technicians perform both the Input Tech role and the Fill Tech role, depending on the needs of particular shifts, the Fill Tech … knew, or should have known, that by dispensing an entire box of insulin, ***they were likely abetting*** the Input Tech's submission of a false claims for 30 days' supply." (*Id.* at ¶ 269.) (emphasis added). Of course, "likely abetting" is not a concept recognized under the FCA—for purposes of pleading scienter or otherwise. It is nothing more than window-dressing for speculation about the actions and beliefs of Input Techs and Fill Techs across the country—roles Buth herself never served in. The Court need not and should not indulge that rank speculation, especially where Buth, who worked briefly in a single pharmacy, is asserting a nationwide scheme over many years. *See, e.g.*, *Presser*, 836 F.3d at 780 (dismissing allegations because relator's "subjective evaluation,

standing alone, is not a sufficient basis for a fraud claim"); *see also Twombly*, 550 U.S. at 555

(holding that while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2),

"labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do").

      Moreover, by choosing to introduce and rely upon on Walmart's Input procedure (POM

1005) and Fill procedure (POM 1008), Buth effectively refutes her own allegations.[3]  POM

1005, which is undisputedly a nationally applicable and Walmart-mandated procedure, requires

the Input Tech to ***"[e]nter the correct days' supply*** if the days' supply field is not auto-populated

or is auto-populated incorrectly (e.g. inhalers and ointments).  ***Manually calculate and enter the***

***correct days' supply***."  (SAC ¶ 218) (quoting POM 1005) (emphases added).  So, while Buth

claims that, "[f]or injectable insulin prescriptions, Walmart has programmed its Connexus

software to generate one full box of insulin as the 'default' quantity listed in the electronic 'drug

file' for each type of injectable insulin," (*id.* at ¶ 221), that allegation proves nothing: POM 1005

is crystal clear that the Input Tech should ***not*** simply accept the default days' supply.  (*See id.* at

¶ 218) (per POM 1005, the Input Tech is required to "[e]nter the correct days' supply if the days'

supply field … is auto-populated incorrectly …."). Far from supporting fraud, POM 1005

affirmatively shows Walmart's commitment to ensuring that employees enter ***accurate***

information on prescriptions, specifically including ***all*** days-supply calculations, which

necessarily include those for insulin pens and topical creams.

      POM 1005 also demonstrates why Buth's reliance on another company's non-litigated

settled case in which that company admitted no FCA liability provides no support for the FCA

---

[3] Walmart has attached a true and correct copy of POM 1005 as **Exhibit 1** and POM 1008 as **Exhibit 2** to this memorandum.  *See* Robinson Decl. Exs. 1-2.  On a motion to dismiss, courts may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

claim in this case. (*See id.* at ¶¶ 16–17, 209–10); *see also United States ex rel. Rahimi v. Walgreens Boots Alliance, Inc.*, No. 15 Civ. 5686 (PAC) (S.D.N.Y. 2019). As this Court has observed, "[i]n *Rahimi*, a pharmacy chain had programmed its software to dispense **only** full boxes of insulin pens regardless of the patient's 'days' supply.'" *Buth*, 2019 WL 3802651, at *5 (emphasis added). That allegation contrasts sharply with what Walmart requires of its employees in POM 1005. In a transparent attempt to bring this case more in line with allegations in *Rahimi*, Buth (for the first time in three complaints) asserts that Walmart "some years ago … maintained a 'hard halt' on splitting boxes, meaning that the Walmart software system would not allow staff to break the box of insulin pens[.]" (SAC ¶ 227.) Buth then contends, in conclusory fashion, that this alleged "hard halt" means that Walmart must have known that its employees were entering inaccurate days' supply. (*Id.*) But Buth presents no personal knowledge of this supposed "hard halt," and does not even allege that such a halt was ever in place during the alleged liability period. (*Id.*) As with so much of the SAC, this claim is nothing more than Buth's pure speculation and subjective characterization, which this Court need not (and should not) accept. *See, e.g.*, *Presser*, 836 F.3d at 780 (dismissing allegations because relator's "subjective evaluation, standing alone, is not a sufficient basis for a fraud claim").

As the Court already has found, this case is not *Rahimi*. *See Buth*, 2019 WL 3802651, at *5. The two key facts are undisputed: Walmart employees could input and dispense less than a box of insulin pens, (*see* SAC ¶ 279) (alleging that Relator and other pharmacists would "break the box when appropriate"), and they were required under nationwide policy to enter the correct days' supply for insulin pens at all times. (*See id.* at ¶ 218) (under POM 1005, the Input Tech is required to "[e]nter the correct days' supply in the days' supply field").

Buth's other new allegations in the SAC similarly fail to show Walmart's scienter. For example, while Buth asserts that "Walmart has no POM related to Government limitations on days' supply for insulin or whether, when, or how to break open five-pen boxes of insulin and dispense individual pens," (*id.* at ¶ 219), Buth later alleges that Walmart did provide insulin-specific guidance in 2018. (*Id.* at ¶ 294–95.) The prior absence of that particular guidance that specifically mentioned insulin pens does not support an inference that Walmart expected its employees to perpetrate a knowing fraud. On the contrary, as Buth admits, POM 1005 required employees to enter the correct days' supply regardless of medication, (*id.* at ¶ 218), and Buth also acknowledges that Walmart later provided explicit guidance as to insulin pens and the need to dispense the correct amount – whether that be a full or partial box. (*Id.* at ¶ 298.) Buth even characterizes this insulin-specific 2018 days' supply guidance as a "reminder,"—a plain acknowledgment that POM 1005 *already required* the accurate calculation of days-supply with respect to insulin pens. (*See id.* at ¶ 299.) Buth's subjective opinion of why Walmart did not maintain such a policy—and the fact that Walmart did not write its policy as perhaps Buth would have written it—does not come close to alleging a fraud. *See, e.g.*, *Presser*, 836 F.3d at 780 (dismissing allegations because relator's "subjective evaluation, standing alone, is not a sufficient basis for a fraud claim").

> (2) The SAC's Reliance on Audits Do Not Raise a Plausible Inference of Scienter.

In a final attempt to allege scienter, Buth spends several pages discussing Walmart's purported awareness of the days' supply scheme because of audits. (SAC ¶¶ 275–311.) But none of the allegations meets the pleading requirements, instead relying on pure conclusion and failing to provide any substantive particularity. Buth contends that "Walmart was well aware, through its comprehensive store-specific auditing and data tracking, that the submission of false

-12-

days' supply data was a common practice that corresponded with the routine policy of dispensing whole boxes of insulin and tubes of topical creams." (*Id.* at ¶ 300.) But this allegation also misses the mark. There is nothing *per se* impermissible about dispensing a full box of insulin pens or a full tube of topical creams. Failing to "break the box" is ***not*** a FCA violation. As with so much of Buth's "allegations," she impermissibly concludes that, when dispensing a full box of insulin pens, Walmart employees are submitting claims with inaccurate days' supply. But such conclusions and subjective inferences are insufficient to state an FCA violation. *See, e.g.*, *Presser*, 836 F.3d at 780 (dismissing allegations because relator's "subjective evaluation, standing alone, is not a sufficient basis for a fraud claim"); *see also Twombly*, 550 U.S. at 555 (holding that while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2), "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

The SAC fails to allege how audits would demonstrate to Walmart that its employees were causing false claims (*i.e.*, inaccurate days' supply) to be submitted to government payors. On the contrary, the SAC's repeated references to POM 1005 (which calls for employees to enter the correct days' supply) and Walmart's specific guidance regarding insulin pens at most "supports only a limited inference that employees had questions about days-supply. It does not support an inference that Walmart was aware of actual over-dispensing, let alone the rampant, brazen over-dispensing Buth alleges." *Buth*, 2019 WL 3802651, at *5.

In sum, Buth's amendments do not to shore up her deficient pleading as to Walmart's scienter. They only reinforce Walmart's good-faith measures to ensure compliance.

b.     <u>The SAC Fails to State the Who, What, Where, When, and How of the Alleged Fraud</u>

Buth's other allegations similarly fail to satisfy the particularity requirement of Rule 9(b). For example, Buth asserts that Walmart's Input Techs "routinely skip" conducting a calculation to determine the number of insulin pens required to fulfill a patient's prescription, and that Input Techs "simply direct the Fill Techs, via the Connexus software-generated labels, to fill injectable insulin prescriptions with an entire 15mL box by entering that full amount of 15mL, regardless of what the required calculations would dictate, into the Quantity field." (SAC ¶ 248.) This is nothing more than an impermissible conclusion that should be disregarded. Buth provides absolutely no detail (the who, what, when, where, and how of the fraud). *See Pirelli*, 631 F.3d at 441–42. Buth cannot "allege simply and without any stated reason for [her] belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10 C 368, 2014 WL 3583980, at *3 (N.D. Ill. July 18, 2014) (citing U*nited States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). Instead, Buth must "link specific allegations of deceit to specific claims for payment." *Id.* (citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

Yet another example is Buth's assertion that she "personally observed Walmart's Input Techs complete the first calculation, enter the actual days' supply, *i.e.*, the days' supply contained in a full box, and receive a rejection" and that "[e]very time Relator would observe these accurate claims be rejected, as indicated by error messages such as 'missing/invalid days' supply' or 'exceeds maximum days' supply,' the Input Tech would then enter '30 days' in order to get the claim accepted for payment." (SAC ¶ 256.) Again, Buth fails to provide ***any*** details about these purported claim examples. She provides no insight as to whether the payor was a

government payor or private insurance, a primary insurer or a secondary insurance plan. She does not allege what that payor's rules were concerning days' supply and limitations. She fails to indicate whether this payor allowed for days' supply overrides or simply allowed pharmacies to bill for a whole box and then enter the plan's maximum days' supply to process a claim. This last part is of significant importance considering that Wisconsin's Medicaid administrator has issued public guidance that allows such a practice for unbreakable prepacked items.[4]

### c. The SAC Fails to Plead Materiality

Buth also fails to plead the key element of materiality under the FCA. The Supreme Court was clear in *Escobar*: materiality is a "rigorous" requirement, and its "standard is demanding." 136 S. Ct. at 1996, 2003. "The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 2003. Moreover, a "misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* Buth must allege materiality with the requisite particularity under Rule 9(b).[5] Although Buth provides two "examples" of insulin pen claims to Wisconsin Medicaid and Medicare Part D, (SAC ¶ 266), Buth fails to allege critical facts on materiality.

---

[4] *See Topic #1939: Drugs with a Three-Month Supply Maximum*, ForwardHealth, https://www.forwardhealth.wi.gov/WIPortal/Subsystem/KW/Print.aspx?ia=1&p=1&sa=48&s=2&c=61&nt=Drugs+with+a+Three-Month+Supply+Maximum (last visited Nov. 2, 2019) ("If a claim is submitted for an unbreakable prepackaged item with directions for use that are greater than the allowable maximum of a 34-day supply and the drug is not listed on the Three Month Supply of Drugs data table, use the smallest available package size and indicate a 34-day supply."). "The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet." *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 n.2 (S.D. Ill. 2006) (citations omitted).

[5] *See United States v. Pfizer Inc.*, No. 16-CV-7142, 2019 WL 1200753, at *8 (N.D. Ill. Mar. 14, 2019) ("Because Relator has not pled falsity or materiality with the requisite particularity under Rule 9(b), this Court rejects Relator's implied false certification theory."); *see also Minzer v. Keegan*, 218 F.3d 144, 151 (2d Cir. 2000); *Grabcheski v.*

First, Buth does not allege that Wisconsin Medicaid or the unspecified Medicare Part D plan would in fact deny a claim for an excess of days' supply (*i.e.*, a claim for an unbroken, pre-packaged box of five pens with a claim of a 30- or 34-day supply). (*See id.*) In fact, both the public guidance from Wisconsin's Medicaid administrator and the internet source cited by the SAC suggest the **exact opposite**. Wisconsin's Medicaid administrator explicitly allows for pharmacies to engage in the very practice alleged in Buth's example, stating: "If a claim is submitted for an unbreakable prepackaged item with directions for use that are greater than the allowable maximum of a 34-day supply and the drug is not listed on the Three Month Supply of Drugs data table, *use the smallest available package size and indicate a 34-day supply*." (emphasis added).[6] That is fully consistent with Buth's description in the first alleged example. Moreover, for some patients, a full box of insulin pens may constitute a 34-day supply.

Also, it appears from Buth's own cited internet source that Wisconsin Medicare Part D and Medicare Advantage Plans would have readily accepted and paid for a full box of Lantus insulin pens as referenced in her allegations. In the SAC, Buth asserts that "while Medicare Part D Plan Sponsors may differ in the days' supply of Lantus for which they will reimburse pharmacies per fill, a 30 days' supply is the most common maximum for most plans in every state." (SAC ¶ 265.) On this point, the SAC cites a website whereby one may search specific

---

*Am. Int'l Grp., Inc.*, 687 F. App'x 84, 87 (2d Cir. 2017) ("Materiality must be pleaded with particularity under Rule 9(b).") (interpreting the False Claims Act); *In re Donald J. Trump Casino Securities Litig.*, 7 F.3d 357, 374–75 (3d Cir. 1993); *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010); *United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 798–80 (8th Cir. 2011); *Hemmer Grp. v. SouthWest Water Co.*, 527 F. App'x 623, 626 (9th Cir. 2013).

[6] *See Topic #1939: Drugs with a Three-Month Supply Maximum*, ForwardHealth, https://www.forwardhealth.wi.gov/WIPortal/Subsystem/KW/Print.aspx?ia=1&p=1&sa=48&s=2&c=61&nt=Drugs+with+a+Three-Month+Supply+Maximum (last visited Nov. 2, 2019). "The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet." *Bova*, 446 F. Supp. 2d at 931 n.2 (citations omitted).

prescriptions drugs across all Medicare Part D or Medicare Advantage Plans. (*Id.*) If one uses the cited website to search for Lantus Solostar Injection (3 ml x 5 crtg) insulin pen boxes, the website returns results for 22 PDP plans.[7] None of these plans indicate that they maintain any "Drug Usage Mgmt" policies related to boxes of Lantus insulin pens, which the website explains "shows the plan requires drug utilization management controls for this particular medication," including "Quantity Limits" expressing the amount of medication allowed over a particular number of days. In other words, Buth's own source does not appear to show that any Wisconsin Medicare Part D Plan or Medicare Advantage Plan would have prohibited the dispensing of a full box or limited dispensing to a 34-day supply.

These inconsistencies in Buth's pleadings only further highlight the need for Buth to plead materiality with the requisite particularity because neither of Buth's two examples alleges that either Wisconsin Medicaid or the unspecified Medicare Part D plan would in fact deny a claim for an excess of 30- or 34-day supply. On the contrary, all signs indicate the opposite to be true.

Second, Buth fails to allege that the patients did not in fact need and use five pens over a 30 or 34-day period. Diabetic patients use of insulin inevitably varies based on their blood sugar, so without this allegation, Walmart and this Court are left guessing as to whether or not these alleged beneficiaries were in fact provided with more insulin than required or instead they needed all five of the pens to control their glucose levels. If the latter is the case, then even if at the time of dispensing the quantity claimed exceeded the calculated days' supply—and in theory providing the opportunity for the government to reject payment—this by itself does not mean

---

[7] Walmart has attached as **Exhibit 3** a screenshot of the results of this search for the convenience of the Court. *See* Robinson Decl. Ex. 3. On a motion to dismiss, courts may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson*, 714 F.3d at 436.

such a statement was material to the government, especially in light of the fact that diabetic patients will always need and use insulin. *See Escobar*, 136 S. Ct. at 2003 ("Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.").

Because Buth fails to plead materiality, this claim should be dismissed. *See United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964, 977 (S.D. Ind. 2018) (finding that the plaintiff failed to plead materiality because "[n]o facts [were] alleged as to what types of claims the government usually did or did not pay, nor as to what the government's compliance priorities were, nor as to the degree of severity of the [defendant's] alleged breaches of regulation").

### 2. Triamcinolone Acetonide Cream

Buth made no effort to bolster her allegations about triamcinolone acetonide cream. Buth alleges that "Walmart pharmacies systematically submit claims for entire 30-gram and 80-gram tubes or other containers of Triamcinolone cream falsely billed and justified as a days' supply far less than the actual days' supply truly reflected by the quantity when the prescriptions' directions are properly taken into account, costing the Government at least $2.00 to $3.00 per fill." (SAC ¶ 272.)

As with the FAC, this is essentially all Buth alleges about this purported fraud scheme. As with the FAC, Buth again dedicates *only three paragraphs* to describing how this scheme supposedly worked—resorting to repeating the mere (impermissible) conclusion that "if a Beneficiary's prescription directs application of the Triamcinolone cream to a specific area, pharmacists must calculate the proper quantity to dispense … However, Walmart pharmacists nationwide routinely skip this step and dispense the largest available tube, rather than one of the smaller available tubes." (*Id.* at ¶ 273.) This is well below the required "who, what, when,

where, and how" of the fraud and in no way provides the "means of injecting precision and some measure of substantiation into [her] allegations of fraud'" – failing to even allege a single specific example of such a fraud. *Berkowitz*, 896 F.3d at 839–40 (citations omitted).

Similar to Buth's insulin pen allegations, the topical cream claims fail to allege that any government healthcare program payor would in fact deny such claims with knowledge of Buth's allegations. Thus, Buth fails to plead materiality and these claims should be dismissed. *See Kietzman*, 305 F. Supp. 3d at 977 (noting that the "materiality standard is demanding" and dismissing Relator's claims because "bald conclusions here have not met its demands").

## C.    RELATOR FAILS TO ALLEGE A NATIONWIDE SCHEME

As with the FAC, the SAC fails to meet the pleading requirements of Rules 8 and 9(b) with regard to any nationwide or company-wide schemes. In its prior ruling, the Court only had to address Buth's failure to plead a nationwide scheme in the context of the only surviving count (the Short Fill Allegations), but the Court's reasoning applies equally to the Days' Supply Allegations.

The Court noted that "[i]n cases alleging widespread fraud, it is true that courts typically require only representative examples to be pleaded with a high level of particularity." *Buth*, 2019 WL 3802651, at *7 (citation omitted). However, "there must also be sufficient facts to support a reasonable inference that the fraud was, in fact, widespread." *Id.* The Court cited to numerous cases where plaintiff failed to allege facts sufficient to infer that fraud was widespread. *Id.* (citing *United States ex rel. Kroening v. Forest Pharmaceuticals, Inc.*, 155 F. Supp. 3d 882, 895–97 (E.D. Wis. 2016) (assertion that relator had spoken with representatives in fifteen other states was insufficient to satisfy Rule 9(b)); *U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, 2014 WL 3385189 (S.D. Miss. July 9, 2014); *U.S. ex rel. Woods v. SouthernCare,*

*Inc.*, No. 3:09–CV–00313, 2013 WL 1339375 (S.D. Miss. Mar. 30, 2013); *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011)).

### 1. The SAC Fails to Allege a Nationwide "Short-Filling" Scheme.

In the SAC, Buth has done nothing to bolster her nationwide allegations as they relate to "short-filling." The SAC repeats the same six examples alleged in the FAC– all from *one* Walmart store in *one* state in less than a *one* year period. (SAC ¶ 193.) The SAC provides no additional detail as to Walmart's purported knowledge of such a "short-filling" scheme outside of one store in Wisconsin

The Court explained that "[i]n connection with the only surviving claim, the alleged 'short-filling' scheme, Buth alleges six examples of 'short-filling' from one Wisconsin pharmacy." *Buth*, 2019 WL 3802651, at *7. Further Buth had "pleaded that Walmart management was aware of the short-filling problem and failed to remedy it anywhere other than Wisconsin." *Id.* Because the FAC's allegations only supported Buth's "short-filling" claim as to one Walmart store in Wisconsin, the Court dismissed the numerous state law claims outside of Wisconsin. *Id.* Since the SAC simply repeats the same allegations in support of Buth's nationwide "short-filling" claim, the Court's prior ruling on this same allegation in the FAC applies: the SAC fails to allege a nationwide scheme as to "short-filling."

### 2. The SAC Fails to Any Well-Pleaded Facts to Support a Nationwide "Days-Supply" Scheme Concerning Insulin Pens or Triamcinolone Cream.

In the SAC, Buth attempts to shore up the allegations related to a nationwide "Days' Supply" scheme for insulin pens, (SAC ¶¶ 312–349), but these attempts fail. As the Court noted, "there must . . . be sufficient facts to support a reasonable inference that the fraud was, in fact, widespread." *Buth*, 2019 WL 3802651, at *7 (collecting cases). It is clear from reading Buth's SAC allegations that all she apparently did was contact random Walmart pharmacies from across

the nation and simply ask someone, "Do you break boxes of insulin pens?" This is not sufficient for at least two reasons.

First, "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli*, 631 F.3d at 442. While Buth "did not use the phrase 'information and belief' in [her] complaint, [her] allegations fall squarely within the definition of the term." *Id.* Allegations based on hearsay constitute information and belief. *Id.* (citation omitted). In the present case, all of these "allegations" are nothing more than second-hand hearsay from unidentified individuals who may have spoken with Buth at some unidentified point in time. This is not enough.

Buth must provide the "who, what, when, where, and how" of her alleged fraud scheme. *See United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009). Here, despite these "allegations" being purportedly "based on Relator's personal knowledge obtained from fellow pharmacy professionals," (SAC ¶ 314), Relator fails to provide a single name (the who), a single date (the when), or any detailed explanation of how these alleged Walmart employees actually billed for these full boxes of insulin (the how).

This is why reliance on "information and belief" and hearsay statements is generally disallowed. *Pirelli*, 631 F.3d at 442; *see also In re Crude Oil Commodity Litig.*, No. 06 CIV. 6677 (NRB), 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007) ("The hearsay nature of these recitals underscores why they are an insufficient substitute for factual allegations, for '[p]laintiffs cannot be permitted to free ride off the press or the complaints of other parties filing similar lawsuits,' but instead 'must prove to the court that their complaint is backed by specific facts supporting a strong inference of fraud.'") (citation omitted). Otherwise, a relator could "allege" anything and everything under the moon in order to accuse a defendant of fraud and deceit,

despite having no personal knowledge (and therefore no substantiation) of the underlying allegations. *See Pirelli*, 631 F.3d at 442 ("A plaintiff who alleges fraud can provide all the detail in the world, but does not have unlimited leeway to do so on 'information and belief.'"). That is exactly what Buth has done here, and Rule 9(b) exists to prevent precisely this tactic. *See Berkowitz*, 896 F.3d at 840 ("The heightened pleading requirement in fraud cases 'forces the plaintiff to conduct a careful pretrial investigation' to minimize the risk of damage associated with a baseless claim.") (citation omitted).

Second, even if this impermissible hearsay were acceptable under pleading standards, these allegations do ***not*** evidence any alleged FCA fraud scheme. Failing to "break the box" does not constitute an FCA violation. Buth's string of secondhand anecdotes does not show, with particularity, that any Walmart employee, and certainly not Walmart employees nationwide, knowingly submitted inaccurate days' supply information to any government payor. In fact, we know almost nothing about these vague circumstances relayed in the SAC. For Buth, if these stores do not "break the box," that ***must*** mean they are causing Walmart to submit false claims to government health program payors. But the opposite is more likely true.

Buth appears to have spoken to the unidentified individuals sometime between her filing of the FAC and the SAC. Therefore, by Buth's own admission, Walmart already had adopted direct guidance (Buth calls this guidance a "reminder") regarding insulin pen boxes prior to these conversations. (*See* SAC ¶¶ 298–99.) In that case, even if these hearsay statements are true and full boxes of insulin pens are being dispensed, between Walmart's "reminder" that insulin pen boxes may be broken and POM 1005 requiring accurate days' supply being entered, (*see id.* at ¶ 218), these Walmart employees should have been submitting accurate days' supply as part of any claim, regardless of payor. Even if Buth's allegations show that a violation might have occurred

because an employee failed to break a box, that does not speak in any way to scienter and does not suffice under the FCA. *See United States ex rel. Laucirica v. Stryker Corp.*, No. 1:09-CV-63, 2010 WL 1798321, at *5 (W.D. Mich. May 3, 2010) (dismissing complaint after finding "[n]othing in Plaintiff's allegations make the inference of illegal intent and conduct any more plausible than the inference of legal intent and conduct."); *see also Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"") (quoting *Twombly*, 550 U.S. at 557).

Finally, Buth does not even attempt to tie her new allegations of a purported nationwide scheme to triamcinolone acetonide cream. As with the FAC, the SAC is silent as to prescription topical creams aside from three paragraphs. (*See* SAC ¶¶ 272–74.) The SAC's complete failure to provide any representative examples is grounds enough to dismiss any claims of nationwide liability as they related to triamcinolone acetonide cream. *See Buth*, 2019 WL 3802651, at *7 ("In cases alleging widespread fraud, it is true that courts typically require only representative examples to be pleaded with a high level of particularity.") (citation omitted); *see also Kroening*, 155 F. Supp. 3d at 895–97 (assertion that relator had spoken with representatives in fifteen other states was insufficient to satisfy Rule 9(b)).

For these reasons, Buth's allegations of a nationwide "Days' Supply" scheme should be dismissed as well. In the event that any of Buth's claims survive Walmart's motion to dismiss, any such claims should be limited to Wisconsin only, consistent with this Court's prior ruling. *Buth*, 2019 WL 3802651, at *6–7 (dismissing all of Buth's state law claims).

## D.    RELATOR'S STATE-LAW CLAIMS SHOULD BE DISMISSED

As discussed above, Buth's FCA claims against Walmart should be dismissed due to fatal pleading deficiencies. Buth's state law claims (Counts Five through Thirty-Six) have parallel

pleading requirements to the federal FCA claims. Therefore, the state law claims fail for the same reasons as the FCA claims. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010) ("State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)."); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (same); *Flynn v. FCA US LLC*, No. 15-CV-0855-MJR-DGW, 2017 WL 3592040, at *4 (S.D. Ill. Aug. 21, 2017) (same).

E.   **RELATOR'S "DAYS' SUPPLY" SCHEME SHOULD BE DISMISSED WITH PREJUDICE**

Buth's Days-Supply Allegations demonstrate that Walmart maintained appropriate and compliant policies and procedures, and that Buth's claims of noncompliance reflect, at most, the result of mistake or negligence by pharmacy staff in Buth's own pharmacy. As a matter of law, such alleged conduct by Buth and other Walmart staff is not the proper basis of an FCA claim. *Buth*, 2019 WL 3802651, at *3 (noting that mistake or negligence does not give rise to a FCA claim) (citing *Berkowitz*, 896 F.3d at 842).

This is also Buth's third complaint, and, as a result, there is no reason to believe that another amended complaint by a relator who worked only briefly at one Walmart pharmacy would cure the deficiencies in these claims. Accordingly, amendment would be futile, and, as such, this matter should be dismissed with prejudice. *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) ("A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile . . . .") (citation omitted); *Khan v. Bd. of Educ. of City of Chicago*, No. 16 CV 8668, 2018 WL 1156202, at *2 (N.D. Ill. Mar. 5, 2018) (dismissing with prejudice several counts after plaintiff had amended multiple times and the court found "there is no reason to believe an amended complaint would cure the deficiencies in these claims").

## <u>CONCLUSION</u>

For the foregoing reasons, Walmart respectfully requests that this Court enter an order dismissing Relator's claims as to her "Days' Supply" scheme in their entirety and with prejudice and dismiss Relator's nationwide claims as they relate to her alleged "Short-Filling" scheme with prejudice as well.

Dated:  November 4, 2019

Respectfully submitted,

WALMART INC.


By: *s/ James N. Law*
　　By Its Attorneys

Eric W. Sitarchuk (PA Bar No. 39082)
eric.sitarchuk@morganlewis.com
Ryan P. McCarthy (PA Bar No. 206961)
ryan.mccarthy@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:　　+1.215.963.5000
Facsimile:　　+1.215.963.5001

– and –

Howard J. Young (DC Bar No. 443359)
howard.young@morganlewis.com
Amanda B. Robinson (DC Bar No. 1017689)
amanda.robinson@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
Telephone:　　+1.202.739.3000
Facsimile:　　+1.202.739.3001

– and –

Mark A. Cameli (WI Bar No. 1012040)
mcameli@reinhartlaw.com
Bryan K. Nowicki (WI Bar No. 1029857)
bnowicki@reinhartlaw.com
James N. Law (WI Bar No. 1088047)
jlaw@reinhartlaw.com

REINHART BOERNER VAN DEUREN S.C.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
 Facsimile: 414-298-8097