UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,** *ex rel.*
**JENNIFER BUTH,** *et al.*

    **Plaintiffs,**

    v.                                           Case No. 18-CV-840

**WALMART INC.,**

    **Defendant.**

---

### DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

---

Jennifer Buth brought this *qui tam* action against Walmart Inc. on behalf of the United States, thirty-one individual states, the District of Columbia, and the City of Chicago.[1] (Docket # 1, Docket # 17.) Buth alleged that Walmart violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, and similar state statutes through various pharmacy practices. (Docket # 1, Docket # 17.) On August 13, 2019, I dismissed without prejudice all counts in Buth's First Amended Complaint except Count One, as well as Counts Five and Six insofar as they related to Count One. (Docket # 56.) Buth filed a Second Amended Complaint repleading certain dismissed counts. (Docket # 58.) Walmart moved for dismissal of the repleaded claims. (Docket # 60.) For the reasons below, Walmart's motion to dismiss will be granted.

---

[1] The United States, thirty individual states, and the District of Columbia have elected not to intervene in this case at this time. (Docket # 48.) The City of Chicago forfeited its right to intervene, and the claim asserted on behalf of the State of Maryland was dismissed without prejudice. (*Id.*)

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must satisfy Rule 8(a) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief . . . in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley vs. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the allegations must suggest that the plaintiff is entitled to relief beyond the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). I must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). However, in deciding a motion to dismiss, I am not bound to accept as true legal conclusions couched as facts. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010).

FCA claims are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016) (citing *United States ex rel. Gross v. AIDS Research All.–Chi.*, 415 F.3d 601, 604 (7th Cir. 2005)). Under Rule 9(b), a plaintiff alleging fraud must state with particularity the circumstances constituting fraud—the "who, what, when, where, and how." *Presser*, 836 F.3d at 776 (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)) (internal quotation marks omitted). The precise details that must be included may vary depending on the facts of the case, and courts must "remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (citing *In re*

*Rockefeller Center Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Nevertheless, plaintiffs must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *Presser*, 836 F.3d at 776 (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 9.03[1][b], at 9-22 (3d ed. 2015)); *see also Pirelli*, 631 F.3d at 442.

## BACKGROUND

Buth is a licensed pharmacist who worked as a pharmacy manager at Walmart's New Berlin, Wisconsin pharmacy from July 2017 to May 2018. (Second Am. Compl., Docket # 58, ¶¶ 29, 167–72.) Walmart is a publicly traded Delaware corporation with its principal place of business in Arkansas, but does business throughout all the party states, the District of Columbia, and the City of Chicago. (*Id.* ¶ 65.)

Medicare is a government healthcare program that pays for reasonable and necessary healthcare for beneficiaries. (*Id.* ¶ 71.) Under Medicare Part D, the government pays a percentage of the cost of covered drugs dispensed with valid prescriptions. (*Id.* ¶¶ 72(d), 89.) The U.S. Department of Health and Human Services oversees the Medicare program and other healthcare programs through the Center for Medicare and Medicaid Services ("CMS"). (*Id.* ¶¶ 74–75.) CMS does not pay pharmacies directly; it pays Medicare Part D "Plan Sponsors," typically private insurance companies, who pay pharmacies directly or through intermediaries known as Pharmacy Benefit Managers ("PBMs"). (*Id.* ¶ 84.) When a pharmacy dispenses a drug to a Medicare beneficiary, it submits an electronic claim to the beneficiary's Part D plan and receives payment from the Part D Plan Sponsor for the price minus any portion that must be paid by the beneficiary. (*Id.* ¶ 85.)

Walmart generates "Prescription Drug Event" ("PDE") records to support its claims for government payment, which it sends to CMS via PBMs and the Plan Sponsor. (*Id.* ¶ 92.) A PDE record must include accurate data including the drug dispensed, the prescription number, the dispensing fee paid to the pharmacy, the cost of the drug, the quantity dispensed, and the provider who ordered the medication. (*Id.* ¶ 93.) That such data be "true, accurate, and complete" is a condition of payment under the Medicare Part D program. (*Id.* ¶ 94.) Additionally, contracting with CMS to offer Part D benefits is conditional on having compliance programs that help Plan Sponsors follow federal regulations and prevent fraud, waste, and abuse. (*Id.* ¶ 98.) Such compliance plans must include "effective annual training and education to prevent fraud, waste, and abuse for network pharmacies." (*Id.*) CMS specifically requires retail pharmacies to train staff on preventing fraud caused by "shorting" prescriptions and improper billing. (*Id.* ¶ 102.)

Buth's Second Amended Complaint alleges that Walmart pharmacies nationwide defrauded the government through two "schemes": 1) dispensing less medication than prescribed but billing for the full amount ("short-filling"); and 2) dispensing and billing for more medication than necessary for a particular period ("days' supply"). (*Id.* ¶¶ 173–349.) Buth asserts that these alleged schemes resulted in the submission of false claims and materially false PDE data to CMS and improper retention of money owed to the government. (*Id.* ¶¶ 350–71.)

## ANALYSIS

The FCA is the primary vehicle used by the government for recouping losses suffered through fraud. *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 700 (7th Cir. 2015),

*reinstated in part, superseded in part by United States v. Sanford-Brown, Ltd.*, 840 F.3d 445 (7th Cir. 2016). The FCA imposes liability on one who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [. . .]
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1). "Knowingly" means that a person has actual knowledge of the falsity of the information or acts with deliberate ignorance or reckless disregard of its falsity, but not necessarily the specific intent to defraud. *Sanford-Brown*, 788 F.3d at 701 (citing 31 U.S.C. § 3729(b)(1)); *United States ex rel. Sheet Metal Workers Int'l Ass'n v. Horning Invs., LLC*, 828 F.3d 587, 593 (7th Cir. 2016); *see also United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018) (mistake or negligence does not give rise to FCA claim). Falsity includes express misrepresentations and misrepresentation by omission. *See United States ex rel. Lisitza v. Par Pharm. Cos., Inc.*, 276 F. Supp. 3d 779, 783 (N.D. Ill. 2017). A "claim" under the statute "includes direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs." *Universal Health Servs., Inc. v. United States ex rel. Escobar,* 136 S. Ct. 1989, 1996 (2016) (citing 21 U.S.C. § 3729(b)(2)(a)).

To establish civil liability under the FCA, a relator generally must prove: (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false. *Berkowitz*, 896

5

F.3d at 840 (citing *Gross*, 415 F.3d at 604). The FCA also imposes a rigorous materiality requirement. *United States ex rel. Thornton v. Pfizer Inc.*, No. 16-cv-7142, 2019 WL 1200753, at *5 (N.D. Ill. Mar. 14, 2019) (citing *Escobar*, 136 S. Ct. at 2002). "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* (citing 31 U.S.C. § 3729(b)(4)).

Walmart argues that the Second Amended Complaint fails to adequately plead scienter, particularity, and materiality with respect to the days' supply scheme. (Def.'s Br. at 7–18, Docket # 61.) Walmart also argues that Buth's state law claims should be dismissed, either because their pleading requirements are parallel to the FCA claims or because Buth has failed to plead a nationwide scheme for either short-filling or days' supply with particularity. (*Id.* at 19, 23–24.)

       1.     "Short-Filling" Scheme: Count One and Counts Five through Thirty-Five

Buth's Count One alleges that Walmart violated 31 U.S.C. § 3729(a)(1)(A) by dispensing less medication than prescribed but billing the government for the full amount. (Second Am. Compl. ¶¶ 350–55.) Buth alleges that "chronically untrained and time-pressured staff" often "short-fill" medication, and Walmart's standard operating procedures do not require pharmacy managers to re-count the medication to correct such errors. (*Id.* ¶¶ 174, 178–92.) Buth provides six examples of claims for short-filled medications submitted by Walmart's New Berlin, Wisconsin pharmacy, including dates, beneficiary initials, and prescription numbers, and avers that even after beneficiaries confirmed that their medications were short-filled, Walmart did not correct the claims. (*Id.* ¶ 193.) Buth alleges that she found several thousand dollars weekly in overages caused by such short-filling at the New Berlin, Wisconsin pharmacy.

6

(*Id.* ¶ 189.) Moreover, Buth asserts that both pharmacy managers and beneficiaries brought these issues to Walmart's attention, and Walmart's corporate management was aware that managers routinely identified such "overages" and false claims. (*Id.* ¶¶ 190, 196–97.) Buth further alleges that Walmart profited from short-filling by using a computerized inventory system to replace the electronic inventory count with the actual on-the-shelf count, which enabled Walmart to re-sell and re-bill for medication that had already falsely been billed to the government. (*Id.* ¶¶ 184–87.)

Walmart does not dispute that the Second Amended Complaint—which is materially identical to the First Amended Complaint on this point—states a claim for an FCA violation. However, Walmart rightly notes that Buth's Second Amended Complaint fails to allege a single instance of short-filling outside her own Wisconsin store. As I explained in my first decision dismissing these nationwide claims, it is true that courts typically require only representative examples to be pleaded with a high level of particularity when the alleged fraud is widespread. (Docket # 56 at 15 (citing *United States ex rel. Morgan v. Champion Fitness, Inc.*, No. 13-cv-1593, 2018 WL 5114124, at *3) (collecting cases).) However, there must also be sufficient facts to support a reasonable inference that the fraud was, in fact, widespread. *Id.* (citing, *inter alia*, *United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 895–97 (E.D. Wis. 2016) (assertion that relator had spoken with representatives in fifteen other states was insufficient to satisfy Rule 9(b))).

Here, not only does Buth fail to make a single allegation of short-filling outside her own Wisconsin pharmacy, but she offers no coherent narrative about the nature of this scheme. (Second Am. Compl. ¶ 195.) I struggle to reconcile the allegation that

7

technicians are too time-pressured to accurately count medications with the allegation that they are careful to avoid over-filling. And while I do not doubt that short-filling occurs nationwide at least occasionally, if not more often, Buth has identified no basis for assuming that the claims were not modified to correct the errors when discovered. Furthermore, Buth makes much of the computer system that "reconciles" the on-the-shelf inventory with the inventory in the computer, but this is manifestly a prudent inventory-management measure; accidental short-filling will presumably happen occasionally even with proper training and attention, and unless a customer complains about missing medication, Walmart seems to have no way of knowing which customer was shorted or which claim to correct. The responsibility to ensure that medications are properly filled and billed appears entirely independent of this inventory system.

None of this is to defend Walmart's procedures as flawless. Buth has simply not adequately pleaded that Walmart management was aware of the short-filling problem and failed to remedy it anywhere other than Wisconsin. *See United States ex rel. Schutte v. Supervalu, Inc.*, 218 F. Supp. 3d 767, 774 (C.D. Ill. 2016) (allegations included that a pharmacy chain had official multi-state policy of selling medications at discounts but reporting un-discounted prices to the government); *United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 173–78 (E.D. Pa. 2012) (plaintiff identified over 49,000 problematic claims in at least three states and Puerto Rico); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1340, 1348 (N.D. Ga. 2015) (relators reliably described violations occurring in seven states, including four of the ten most populous states in the nation). Therefore, I find that Counts Five through Thirty-Five do not state a claim as to the short-filling scheme.

### 2. "Days' Supply" Scheme: Count Two and Counts Five through Thirty-Five

Buth's Count Two alleges that Walmart violated 31 U.S.C. § 3729(a)(1)(A) by billing medication to the government as a patient's days' supply of medication, when the amount billed was far more than the patient's actual days' supply. (Second Am. Compl. ¶¶ 198–211, 359.) Buth asserts that Walmart engaged in this days' supply scheme with respect to both insulin pens and triamcinolone acetonide cream. (*Id.* ¶¶ 198, 272.) I will consider the allegations regarding insulin pens and triamcinolone acetonide cream separately.

#### 2.1 Insulin Pens

In the Second Amended Complaint, Buth explains that Medicare billing requirements direct pharmacists to calculate the amount of insulin a patient requires for a certain number of days (usually thirty) based on the prescription and determine how many insulin injection pens are needed to provide that days' supply, then round down to the nearest full injection pen. (*Id.* ¶ 206.) Buth alleges that Walmart staff routinely skip the calculation and instead dispense entire boxes of insulin injection pens, which they then bill as 30-days' supplies, even when a patient requires less than a full box of pens for thirty days. (*Id.* ¶¶ 4, 202–08.) For example, a patient who requires only three insulin injection pens in order to use insulin as prescribed for thirty days would be given a full box of five pens, and Walmart would bill for the full box as a "30-days' supply." (*Id.* ¶¶ 147, 200, 208, 210.) Buth offers two examples of purported false submissions that took place in January 2018 at Walmart's New Berlin, Wisconsin pharmacy, where Buth worked. (*Id.* ¶ 266.)

### 2.1.1 Scienter

In my first decision, I found that Buth's allegations regarding scienter were insufficient. I noted that there was no indication in the First Amended Complaint that any employee submitted a claim that the employee knew or should have known over-stated the amount required for a patient's days' supply or that Walmart was aware of such over-dispensing. (Docket # 56 at 10.) Additionally, I noted the lack of alleged scienter on the part of Walmart management, as Buth did not allege that over-dispensing insulin was Walmart's official policy, or that Walmart management was aware of even one instance of over-dispensing. (*Id.*) Walmart argues that the Second Amended Complaint does not include allegations that meet the requisite scienter under the FCA for the days' supply insulin scheme. (Def.'s Br. at 7.)

Buth attempts to remedy the deficiencies previously found in her complaint by detailing Walmart's processes for filling prescriptions and submitting claims for payment. (Pl.'s Br. at 6–7, Docket # 64.) She argues that these new allegations answer the Court's previous question of whether the employee who allegedly over-filled the prescription also submitted the claim—explaining that the same Input Tech who calculates days' supply and inputs prescriptions is also responsible for submitting claims for those prescriptions to government health programs for payment. (*Id.* at 7 (citing Second Am. Comp. ¶ 207.). Buth further alleges that the Input Tech then directs the Fill Tech to falsely over-fill the customer's prescription accordingly. (*Id.* (citing Second Am. Compl. ¶ 255.).

Buth also argues that her second amended complaint provides affirmative answers to the Court's previous questions regarding Walmart's corporate scienter. (Pl.'s Br. at 8.) Buth's primary allegation is that Walmart had a corporate policy prohibiting its pharmacy

staff from "breaking the box" of insulin pens. Buth alleges a "corporate-wide scheme for [Walmart's] pharmacies to routinely submit claims for entire 1,500-unit boxes of insulin injection pens, and falsely bill and justify those claims as being for a days' supply far less than the days' supply of insulin actually provided to the beneficiary." (Second Am. Compl. ¶ 271.) Understandably, Buth seeks to liken Walmart's alleged actions to that of Walgreens, who entered into a $209.2 million settlement with the government over its alleged falsification of insulin days' supply. (*Id.* ¶¶ 15–17.) In the Walgreens case, the relator alleged that Walgreens configured its pharmacy management program to designate a full box of insulin pens as the "minimum quantity," making it so pharmacy staff could not dispense individual insulin pens. (Docket # 54-1 at 135, ¶ 50.) The relator further alleged that Walgreens configured its computer system to record and automatically reuse the days of supply reported for the initial fill for subsequent refills, thus resulting in premature refills for the remainder of the prescription. (*Id.* at 136–37, ¶¶ 53, 55–61.)

Buth alleges that "some years ago," Walmart, like Walgreens, maintained a "hard halt" on splitting boxes, "meaning that the Walmart software system would not allow staff to break the box of insulin pens." (*Id.* ¶ 277.) Buth further alleges, however, that while the "hard halt" had *technically* been removed by the time she worked for Walmart, in reality the "don't break the box" policy continued. (*Id.* ¶ 278.) Buth alleges that this allegation is supported "by substantial new detail." (Pl.'s Br. at 10.) Specifically, Buth states the following in support of this alleged corporate policy: (1) none of Walmart's formal standard operating procedures address government limitations on days' supply or whether, when, or how to break insulin boxes and dispense individual pens (*id.* (citing Second Am. Compl. ¶¶ 219, 224, 231, 236, 259); (2) Walmart has an incentive bonus plan that motivates

11

pharmacists and PICs to maximize pharmacy sales, and the "rapid-fire, speed-based culture" (*id.* (citing Second Am. Compl. ¶¶ 260–63, 7–8, 129–133, 207); (3) Walmart engaged in manipulations of pharmacy software making it difficult for pharmacy employees to input and dispense less-than-full-box prescriptions by creating a default setting in its software to a full-box quantity of insulin pens (*id.* at 11 (citing Second Am. Compl. ¶¶ 221–22, 279); and Walmart trained staff not to "break the box" (*id.* at 12 (citing Second Am. Compl. ¶¶ 208, 257, 276, 321, 332, 335, 338, 341, 343).) Buth further alleges that Walmart management was fully aware of the unwritten "don't break the box" policy because Walmart regularly conducted "cycle counts" and audits of its inventory and compliance function, during which the absence of broken boxes of insulin pens was clearly evident. (*Id.* at 14–15 (citing Second Am. Compl. ¶¶ 281–89, 306–07.).

Buth's allegations are a far cry from the allegations in the Walgreens case, and even more so, continue to fall short of alleging the requisite scienter by Walmart. Despite Walmart allegedly having an unwritten "don't break the box" policy, Buth alleges that in April 2018, Walmart specifically provided guidance to its employees suggesting that pharmacy staff could "break the box" of insulin. (*Id.* at 12 (citing Second Am. Compl. ¶¶ 298, 291–92.) She also alleges that certain Walmart pharmacists, herself included, "would from time to time ignore the improper practice and insist on breaking the box when appropriate, and in recent years, certain Walmart stores, responding to insurer audits, began to do so more generally, but these pharmacists and these stores were the exception to the general rule." (Second Am. Compl. ¶ 279.) Buth does not allege, however, that these pharmacies faced discipline from Walmart for allegedly breaking the corporate policy, or were otherwise discouraged from doing what they were doing. Thus, Buth not only alleges

12

that Walmart had "technical 'guidelines' allowing box breaking," but that there were Walmart pharmacies that "broke the box" on a regular basis (*Id.* ¶¶ 279, 311.)

Buth's "substantial new detail" does not allege scienter. A lack of a formal policy addressing breaking insulin boxes does not mean that Walmart had a policy *against* breaking insulin boxes, nor does the "speed-based" culture show an official policy against box breaking. Even Buth's allegations that Walmart's software made it more difficult to dispense less than full boxes of insulin does not mean that Walmart *required* its pharmacy staff to not break apart insulin boxes.

As such, Buth's allegations do not give rise to a plausible inference that Walmart acted with at least reckless disregard to the possibility that it was causing the false submission of claims to the government in violation of the FCA. The Seventh Circuit has recognized that, in the FCA context, "a person acts with reckless disregard 'when the actor knows or has reason to know of facts that would lead a reasonable person to realize' that harm is the likely result of the relevant act." *United States v. King-Vassel*, 728 F.3d 707, 713 (7th Cir. 2013) (quoting *Black's Law Dictionary* 540–41 (9th ed. 2009)). Therefore, to show reckless disregard, Buth must only allege that Walmart "had reason to know of facts that would lead a reasonable person to realize that [Walmart] was causing the submission of a false claim . . . or that [Walmart] failed to make a reasonable and prudent inquiry into that possibility." *Id.* Taking Buth's allegations as true, none of the alleged conduct of Walmart or its employees supports a plausible inference that Walmart had reason to know that employees were submitting false claims or failed to make a reasonable and prudent inquiry into the possibility.

For these reasons, I find that the Second Amended Complaint does not allege the requisite scienter for an FCA claim. Accordingly, I need not address whether the Second Amended Complaint sufficiently alleges the remaining requisite elements of particularity and materiality. Therefore, I will dismiss the days' supply scheme as it relates to insulin pens.

2.2    Triamcinolone Acetonide Cream

Walmart argues that the Second Amended Complaint does not bolster Buth's allegations regarding the days' supply scheme for triamcinolone acetonide cream. (Def.'s Br. at 18.) The Second Amended Complaint devotes three paragraphs exclusively to triamcinolone acetonide cream, alleging that "[i]n the same exact way" as with insulin pens, Walmart pharmacies submit claims for entire tubes or containers of triamcinolone acetonide cream falsely billed as a patient's days' supply. (Second Am. Compl. ¶ 272.) Buth does not offer even one example of a claim that was allegedly falsely submitted with respect to triamcinolone acetonide cream. Nor does she include facts sufficient to demonstrate the requisite scienter. Therefore, I will dismiss the days' supply scheme claim as it relates to triamcinolone acetonide cream.

2.3    Nationwide Days' Supply Insulin Scheme

Buth alleges that Walmart's days' supply insulin scheme extended to its pharmacies nationwide. Buth avers that, based on her conversations with current or former Walmart pharmacy employees, stores located in Arizona, Arkansas, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Mississippi, Missouri, North Carolina, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Washington, and West Virginia either do not calculate days' supply of insulin properly or

have only recently begun to break open boxes of insulin pens. (*Id.* ¶ 316–45.) Buth's examples of conversations with former and current Walmart pharmacy employees do not support an inference of a nationwide fraud scheme. Assuming the allegations are true, there is still no factual support to suggest that Walmart knew that employees nationwide were incorrectly calculating the days' supply. Therefore, I find that Counts Five through Thirty-Five do not state a claim as to the days' supply scheme.

       3.       *Alleged Falsifying PDE Data: Count Three*

Count Three alleges that Walmart violated 31 U.S.C § 3729(a)(1)(B) by falsifying prescription drug event (PDE) data in support of false claims for prescription medications. (Second Am. Compl. ¶¶ 362–66.) This count is dismissed insofar as it concerns the alleged "days' supply" scheme, which fails to state a claim upon which relief may be granted.

       4.       *Alleged Concealing Obligation to Pay the Government: Count Four*

Count Four alleges that Walmart violated 31 U.S.C. § 3729(a)(1)(G), which imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." (Second Am. Compl. ¶¶ 367–71.) This count is dismissed insofar as it relates to the alleged "days' supply" scheme, for reasons already discussed.

       5.       *Wisconsin False Claims for Medical Assistance Act*: *Count Thirty-Six*

In her First Amended Complaint, Buth alleged that Walmart violated the Wisconsin False Claims for Medical Assistance Act, Wis. Stat. § 20.931, which was repealed in its entirety on July 12, 2015. *See* 2015 Wis. Act 55, § 945n. In my first order, I found that while

Walmart could be liable for fraudulent activities committed before the repeal date pursuant to Wis. Stat. § 990.04, Buth did not plead sufficient facts to support a reasonable inference that Walmart engaged in any fraud prior to July 12, 2015. (Docket # 56 at 16.) Buth has repleaded her Wisconsin False Claims for Medical Assistance Act claim. Yet, the Second Amended Complaint does not contain facts to support a reasonable inference that Walmart engaged in any fraud prior to July 12, 2015. Therefore, Count Thirty-Six fails to state a claim upon which relief could be granted and will be dismissed.

      6.    *Leave to Amend*

Walmart argues for dismissal with prejudice because it believes any attempt to save the claims related to the days' supply scheme would be futile. (Def.'s Br. at 24.) Buth admits that she has been given "adequate opportunity" to replead the scienter allegations with respect to the days' supply scheme, but contends that she should not be precluded from addressing any other basis for dismissing the days' supply scheme allegations "that the Court might identify for the first time as to the [Second Amended Complaint.]" (Pl.'s Br. at 25.)

The Seventh Circuit has stated that a "plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed" and that when "a district court denies a plaintiff such an opportunity, its decision will be reviewed rigorously on appeal." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). The Second Amended Complaint is Buth's second attempt to correct the deficiencies noted by Walmart in its first motion to dismiss. The Second Amended Complaint fails, however, to cure the deficiencies as to the days' supply scheme. The *Runnion* court stated that when

16

Case 2:18-cv-00840-NJ   Filed 02/08/21   Page 16 of 17   Document 68

"it is clear that the defect cannot be corrected so that amendment is futile," there is no harm denying leave to amend and entering final judgment. *Id.* at 520. This is such a case where further amendment would be futile. As such, Walmart's motion to dismiss is granted and Count Two is dismissed with prejudice. Counts Three and Four are also dismissed with prejudice, insofar as they relate to Count Two.

## CONCLUSION

Counts Two and Five through Thirty-Six of Buth's Second Amended Complaint fail to a claim upon which relief can be granted. Therefore, dismissal of these counts is appropriate. Counts Three and Four also fail to state a claim except insofar as they relate to Count One.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Walmart's Motion to Dismiss (Docket # 60) is **GRANTED**. Count Two is **DISMISSED WITH PREJUDICE**. Counts Three and Four are **DISMISSED WITH PREJUDICE** except insofar as they relate to Count One. Counts Five through Thirty-Six are **DISMISSED WITHOUT PREJUDICE**.

Dated at Milwaukee, Wisconsin this 8th day of February, 2021.

BY THE COURT

*[signature]*

NANCY JOSEPH
United States Magistrate Judge